441 So.2d 1092 (1983)
Donald B. SCHMECK and Gloria Schmeck, His Wife, and Frederick G. Lippold and Janet Lippold, His Wife, Appellants,
v.
The SEA OATS CONDOMINIUM ASSOCIATION, INC., Appellee/Cross-Appellant, and
Sea Oats Developer, Inc., a Florida Corporation, Appellee/Cross-Appellee.
No. 82-896.
District Court of Appeal of Florida, Fifth District.
October 27, 1983.
Rehearings Denied December 7, 1983.
*1093 Thomas R. Hess, of Ossinsky, Krol & Hess, Daytona Beach, for appellants.
William G. Norwich, of Gralla & Norwich, Cocoa Beach, for appellee/cross-appellee, Sea Oats Developer, Inc.
James S. Theriac, III, of Holcomb, Theriac & Steinberg, Merritt Island and S. Lindsey Holland, Jr., of Crofton, Holland, Starling, Harris & Severs, P.A., Melbourne, for appellee/cross-appellant.
SHARP, Judge.
Gloria and Donald Schmeck, and Janet and Frederick Lippold, owners of two condominiums in the Sea Oats Condominium, and the Sea Oats Condominium Association, Inc., appeal and cross-appeal from a judgment rendered after a non-jury trial. The lower court denied the condominium unit owners and the association any damages against Sea Oats Developers, Inc., the company that built and sold the condominium, for various construction defects in the *1094 Schmeck and Lippold units and in the common elements; and it mandated that the Schmecks and Lippolds remove shutters from the exterior of their units that they had installed to protect the interiors of their units from water damage. The court also denied the unit owners any remedy against the condominium association. We affirm in part and reverse in part.
It is with great reluctance that we reverse a judgment after a trial on the merits. Such a judgment comes to us as presumptively correct, and we cannot overturn findings of fact where there is conflict in the evidence or testimony.[1] Unfortunately for us the lower court made no findings of fact. That makes our review more difficult because we must look at the whole record and seek to uphold it, if possible, on any theory.

I. Claim of the Condominium Association Against the Unit Owners
This litigation commenced when the association sought an injunction to require the Schmecks and the Lippolds to remove storm shutters they had installed across the exterior of their sliding glass doors and windows on the ocean side of their units. The Schmecks purchased unit 28 in Sea Oats in February of 1979, and the Lippolds purchased unit 22 in the same year. Both purchases were from the developer. The Schmecks' unit was on the top floor, and the Lippolds' unit was on the fourth floor, directly beneath the Schmecks.
The Schmecks and the Lippolds moved into their respective units in June of 1979. From that time, and even at the time of the trial in this case, they experienced severe water damage in their units. Water seeped in through the windows, the doors, and the walls. They complained to the developer, who at least twice tried to remedy the problem by recaulking the walls and window and door frames.
There is conflict in the record whether the unit owners sufficiently notified the association about their problems before the June and July meetings of the association's board in 1980. At the June meeting, they asked the board to allow them to install storm shutters across the exterior of the glass doors facing the balconies of the units. Permission was not granted. Again the record was conflicting as to whether the association agreed to work with the unit owners to get the developer to remedy the problem, and whether the unit owners cooperated with the association on this remedy. Resolving this conflict most favorably to support the judgment, it appears that the Schmecks and the Lippolds did not respond to the association's overtures, and they installed the shutters with full knowledge that they lacked permission to do so.
The installed shutters reduced the water seepage and leakage in both units. The uncontroverted testimony was that the Schmecks spent four thousand one hundred six dollars ($4,106.00), and the Lippolds spent three thousand four hundred eighty-two dollars twenty-five cents ($3,482.25), to repair the woodwork, repaper walls, replace the draperies and upholstery, and refinish and replace ruined furniture. The units were refurnished with approximately the same quality and kind of furnishings as they had originally contained prior to the water problems.
The Sea Oats Declaration of Condominium provides that unit owners may not make any structural modifications or alterations of their units "including ... the installation of awnings, shutters ... and other things which might protrude through or be attached to the walls of the apartment buildings... ."[2] Further, the declaration *1095 clearly defines the balcony areas where the shutters were installed as limited common elements, and the exterior walls where they were attached as common elements.[3] Under the Florida Condominium Law, unit owners are prohibited from making any alterations or additions to the common elements, except in a manner provided by the declaration,[4] and they are required to comply with that statute and the provisions in their declarations.[5] The president of the association testified that the installation of the shutters could have been authorized by a change in the by-laws or declaration. However, no such change was made.
The lower court was correct in concluding that the unit owners violated the provisions of the declaration and the condominium statute by installing the storm shutters on their units, and that they could be required to remove them. Fountains of Palm Beach Condominium, Inc. No. 5 v. Farkas, 355 So.2d 163 (Fla. 4th DCA 1978); Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971). In the Farkas case, an owner built a patio on the common elements, and in Breitenbach, the owners replaced the screens on their porch with glass jalousies. But in neither case did the owner have a compelling reason for doing so, as in this case.
Prior to the trial, the association, the Schmecks and the Lippolds entered into a written stipulation that should have controlled their positions in this case. The stipulation provided:
That the actions and events giving rise to the present lawsuit are primarily the result of the tortious actions of the Sea Oats Developers, Inc., a Florida corporation.
It appears that both the Plaintiff [the Association] and the Defendants [the unit owners] have causes of action against the Sea Oats Developers, Inc., and that amendment of the pleadings making the Sea Oats Developers, Inc. a party defendant, will enable the existing parties to fully adjudicate the matters now in controversy.
In the amended pleadings, both the association and the unit owners claimed the developer had breached its implied warranties with regard to its construction of the common elements and the Schmeck and the Lippold units, causing all of these parties to suffer damages.
The association did not offer any proof that the Schmecks and the Lippolds had not suffered thousands of dollars of damage to their units and furnishings, and their own expert witness testified that the severe water problems suffered by the unit owners were caused by the developer's failure to construct the roof of the building according to plans, and its failure to provide any down-spouts or gutters. He also testified that the shutters were not the best way to solve the Schmecks' and the Lippolds' water problems. It is clear and undisputed, however, that neither the association nor the developer took any temporary or permanent action to stop the water seepage, and the Schmecks and the Lippolds resorted to the shutters as the best remedy known to them at the time. Indeed, had they not taken some steps to protect their refurnished units, and if the water damage had recurred as it most likely would have, they would likely be found not to have tried to mitigate their damages. "Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense, or humiliation." Restatement (First) of Contracts § 336(1) (1932).
We affirm the lower court's injunction mandating removal of the shutters because they clearly violate the declaration *1096 and condominium law. However, on remand we urge that the court temper the immediacy of its order, so as to prevent the recurrence of water damage in the units before the construction defects are corrected. The unit owners in this case have a duty to take reasonable steps to protect their units and furnishings until the cause of the water leakage is corrected. Putting up shutters in this case can be viewed as boarding up glass doors and windows with plywood after a hurricane has broken out the glass. We do not mean to suggest, however, that the unit owners can recover from any party the full cost of the shutters, unless they also establish it was a reasonable method to use for temporary protection of their units.

II. Claims of the Unit Owners Against the Condominium Association
The Schmecks and the Lippolds argue that the association has the primary duty to repair and maintain the common elements and the limited common elements under the Sea Oats Declaration of Condominium.[6] The association also has the duty to make emergency repairs or replacements of the condominium property, including the common elements and limited common elements.[7] The uncontroverted testimony at trial established that the Schmeck and the Lippold apartments were being damaged by leaks through defects in the common elements: rainfall cascaded from the roof onto the balconies and exterior walls of the units.
However, there was also adequate testimony to support the lower court's conclusion that the association had been newly formed when the damage suffered by the Schmecks and the Lippolds came to its attention. The association referred the problem to its attorney, and tried to work with the developer to resolve various construction defects. Within a four month period after retaining an attorney and not being able to work out a satisfactory resolution with the developer, the association authorized its attorney to file suit against the developer.
Under these circumstances, the court could have concluded that the association was acting as reasonably and expeditiously as possible, and that it was not primarily responsible for the water problems being experienced by the Schmecks and the Lippolds. See Janke v. Corinthian Gardens, Inc., 405 So.2d 740 (Fla. 4th DCA 1981). Further, the stipulation quoted above, by itself, is a sufficient basis upon which to conclude that the Schmecks and the Lippolds agreed that the damage was primarily caused by the developer, not the association. That portion of the judgment denying the Schmecks' and Lippolds' claims against the association is therefore affirmed.

III. Claims of the Unit Owners and the Association Against the Developer
As described above, the record is uncontroverted that the Schmecks' and the Lippolds' condominium units suffered severe water intrusion, and that the unit owners expended several thousand dollars to repair and refurnish the units. They testified that although the shutters stopped the worst leaks, the problem was not completely cured. Before the shutters were installed, the units were not habitable.
The association's expert witness, Clark Smith, testified as to numerous construction problems with the buildings, including substandard construction of the false mansard built around the buildings' roofs; defects in the garage roofs; poor concrete work on *1097 the sidewalks and stairs; and seepage between the balcony supports, which needed to be sealed at the very least. Smith also testified that there was a large amount of storm water run-off from the roofs which flooded onto the balconies, causing the Schmecks' and Lippolds' problems. The building had not been constructed according to its plans and specifications. The roof should have extended an additional eighteen inches, or the full distance of the balcony below. Also, the plans called for down-spouts, which would have channeled the run-off away from the balconies. Smith said it was too late now to extend the roof out eighteen inches, but the flooding problem could be handled with a gutter and drain system. He testified as to each item of construction defect, and the cost to repair or restore it.
The developer's expert witness, Clifton Gurr, who drew the plans for the condominium, testified that the developer did not build the roof according to the plans because the roof should have extended out the same distance as the balconies. Gurr also admitted the plans called for two by three standard galvanized down-spouts, but he could not locate where they were to have been placed on the plans. Gurr denied, however, that the deviation from the plans caused any structual problems. He testified, for example, that the open balconies would have received run-off and rain anyway. However, Gurr did admit there was some substandard workmanship on the condominium.
The developer admitted he shortened the roof eighteen inches for aesthetic and structural reasons, and it was a deviation from the plans. He denied that this caused the unit owners' water seepage problems, but he did not deny they existed. The developer testified he sent out numerous workmen to caulk windows and walls, and make numerous other repairs. But he did not deny that additional repairs still needed to be made. He testified he could make the various repairs Smith talked about at no cost, or a fraction of the cost Smith estimated would be reasonable.
It is now well established that a developer may be held liable for damages for breach of implied warranties in failure to construct according to plans[8] or in a workmanlike or acceptable manner,[9] or for failure to provide a unit or building which is reasonably habitable.[10] These warranties run in favor of the condominium association and (at least) the first purchasers of the units from the developer.[11]
Because the record here clearly established that the developers did not build the building according to its plans and specifications, that there was defective workmanship in the condominium construction, and that the Schmecks' and the Lippolds' units were not reasonably fit as residences due to water leaks and seepage, the judgment below denying the association and the unit owners any relief against the developer is clearly erroneous. We reverse that portion of the judgment denying relief against the developer, and remand this proceeding for a new trial on the issue of damages.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ORFINGER, C.J., and DAUKSCH, J., concur.
NOTES
[1] See Industrial Builders, Inc. v. Heritage Ins. Co. of America, 416 So.2d 1244 (Fla. 4th DCA 1982); Highland Lakes, Inc. v. Art Present Real Estate, Inc., 147 So.2d 348 (Fla. 3d DCA 1962).
[2] Section 13, Declaration of Condominium for the Sea Oats Condominium provides in full:

No owner of an apartment shall make any structural modifications or alterations of the apartment. Further, no owner shall cause any improvements or changes to be made on or to the exterior of the apartment buildings, including painting or other decoration, the installation of awnings, shutters, electrical wiring, air conditioning units and other things which might protrude through or be attached to the walls of the apartment building; further, no owner shall in any manner change the appearance of any portion of the apartment building not wholly within the boundaries of his apartment.
[3] § 5, Declaration of Condominium for the Sea Oats Condominium.
[4] § 718.113(2) & (3), Fla. Stat. (1981).
[5] § 718.303(1), Fla. Stat. (1981).
[6] Section 11, Declaration of Condominium for the Sea Oats Condominium, provides:

The Association, at its expense, shall be responsible for the maintenance, repair and replacement of all common elements and limited common elements, including those portions thereof which contribute to the support of the building, and all conduits, ducts, plumbing, wiring and other facilities located in the common elements, or the interior walls, ceilings or floors of condominium units, for the furnishing of utility services to the apartments.
[7] § 6C(7), By-Laws of the Sea Oats Condominium Association, Inc.
[8] Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981); B & J Holding Corp. v. Weiss, 353 So.2d 141 (Fla. 3d DCA 1977); see Grossman Holdings, Ltd. v. Hourihan, 414 So.2d 1037 (Fla. 1982).
[9] Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972); see Gory Associated, Ind., Inc. v. Jupiter Roofing & Sheet Metal, Inc., 358 So.2d 93 (Fla. 4th DCA 1978).
[10] See Putnam v. Roudebush, 352 So.2d 908 (Fla. 2d DCA 1977).
[11] Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 2d DCA 1979).