Jeanette WESCOTT, et al.,
Plaintiffs–Appellants,

v.

BURTONWOOD MANOR CONDOMINIUM ASSOCIATION BOARD OF MANAGERS, et al., Defendants–Respondents.

No. 52493.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 15, 1987.

Rehearing Denied Jan. 20, 1988.

---

David R. Spitznagel, Kirkwood, for plaintiffs-appellants.

Stephen C. Murphy, Clayton, for defendants-respondents.

DOWD, Judge.

Plaintiffs Jeanette Wescott and Melvin and Betty Gaugh appeal following the trial court's order granting a motion for summary judgment dismissing plaintiffs' claim for damages and entering an order for a mandatory injunction to remove the flood retaining walls and the glass greenhouse covers from the common elements. We affirm.

The source of this dispute stems from the building of retaining floodwalls and greenhouse covers on the common elements of Burtonwood Manor Condominiums. Plaintiffs contend the Burtonwood Manor Condominium Association failed repeatedly to address their flooding problem. Plaintiffs presented a proposal to the Board of Managers on August 15, 1980 requesting permission to build concrete retaining walls to protect their units from flooding. At this meeting, one board member stated on the record his willingness to help plaintiffs solve their flooding problem.

Without receiving permission from the Board of Managers, applying for a building permit, or reviewing the applicable bylaw provisions, plaintiffs constructed the floodwalls and glass greenhouse covers in late September of 1980. After the construction of the floodwalls, one plaintiff sent a letter to the Board dated October 2, 1980 requesting payment of the enclosed bill for $915.00 for the building of the floodwall and the relocating of her air conditioner units. The Board in its response never authorized the expenditure of any money for correcting the flooding problem, but instead, the Board responded to plaintiff's letter by stating its sympathy and by pointing out the flooding problem was not caused by the Board. The cause of the flooding problem was the backup of sewer and surface water. Regardless of the cause of the flooding problem, the builder constructed an auxiliary sewer system to prevent further flooding before the building of the floodwalls by plaintiffs.

No further communication occurred between plaintiffs and the Board concerning this matter until January of 1981 when plaintiffs requested a special use permit from the City of Ballwin to retain the floodwalls and greenhouse covers. At a special meeting on January 15, 1981, the Board voted to remove the structures. Thereafter the Board advised plaintiffs the floodwalls and greenhouse covers violated the bylaws and requested the removal of these structures. At the November 1981 Board of Managers meeting, plaintiffs requested the Board to execute and deliver a quit claim deed covering the property on which the structures were located. The Board refused to take the requested action.

Plaintiffs sued for damages and the Board counterclaimed, seeking a mandatory injunction for the removal of the floodwalls and glass greenhouse covers. The trial court entered an order granting a mandatory injunction ordering the removal of the floodwalls and covers and the restoration of the property to its former condition at plaintiffs' cost. The court justified the issuance of the injunction by stating the evidence showed that plaintiffs constructed the improvements on the common elements of Burtonwood Manor Condominiums without the consent or approval of the Board of Managers and in violation of the bylaws. The trial court granted defendants' motion for summary judgment and dismissed plaintiffs' petition at plaintiffs' cost.

Plaintiffs in their first point on appeal contend the trial court erred by sustaining defendants' motion for summary judgment because defendants had a duty to protect plaintiffs' property from flooding. Plaintiffs argue defendants negligently failed to exercise their power "to maintain and to protect" plaintiffs' condominiums and patios from flooding caused by the backing up of storm water.

■ To prevail on their negligence cause of action, plaintiffs must allege ultimate facts which show the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and injury to the plaintiff resulting from such failure. *Nappier v. Kincade,* 666 S.W.2d 858, 860 (Mo.App. 1984). Plaintiffs failed to establish defendants owed a duty to them as a matter of law to maintain and protect their individual condominium units from storm water damage or from damage caused by third parties.

■ The duties owed by defendants to the individual condominium owners are limited to those duties included in the Burtonwood Manor ByLaws, especially Article 7, and the provisions of Chapter 448, RSMo 1986. Condominium bylaws must be strictly construed and constitute the rules and regulations which govern the internal administration of the condominium complex. 15A Am.Jur.2d *Condominiums and Cooperative Apartments* § 16 (1976). The bylaws governing Burtonwood Manor Condominiums authorize defendants to establish a maintenance fund from the monthly condominium fees assessed to each unit owner and to use the collected funds to pay for "water, waste removal, electricity, gas, sewer expenses, and other necessary utility services for the common elements." In addition, the bylaws authorize defendants to maintain, repair and insure the common elements for the benefit of all unit owners of the condominium complex.

■ Applying the rule of strict construction of the bylaws to the case at bar, we find nothing within the bylaw provisions mandating a duty owed by defendants to maintain and protect the lower level of plaintiffs' individual condominium units from storm water damage not caused by defendants or other unit owners. Moreover, the bylaw provisions imposed no duty upon defendants to be responsible for the negligent acts of third parties, in this case the condominium's developer and City of Ballwin. The third parties created the storm water problem by approving the large scale construction in the area and by installing an undersized sewer. By installing an auxiliary sewer system to address the storm water problem, the City of Ballwin and the developer acknowledged that the flooding problem and its resolution fell within their realm of responsibility.

When reviewing the granting of a motion for summary judgment, we must review the entire record in the light most favorable to the nonprevailing party and must accord to that party the benefit of every reasonable doubt to be drawn from the record. *First Nat'l Bank of St. Charles v. Chemical Products, Inc.,* 637 S.W.2d 373, 375 (Mo.App.1982). In addition, we must determine from our review of the record whether a genuine issue of material fact exists requiring trial and whether the moving party is entitled to a judgment in his favor as a matter of law. *Miller v. Kruetz,* 643 S.W.2d 310, 312 (Mo.App.1982); Rule 74.04. The burden to demonstrate by unassailable proof that there is no genuine issue of fact to be tried is on the prevailing party for whom the summary judgment is rendered. *Id.* In any event, "if, as a matter of law, the judgment is sustainable on any theory, it must be affirmed." *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App.1984).

From our review of the record, we find defendants are entitled to a summary judgment because defendants, the Board of Managers, breached no duty owed to plaintiffs. The dispositive issue in this appeal concerns the nature of the duties defendants owed to plaintiffs as outlined in the condominium bylaws and the legal effect of these duties. The trial court disposed of this issue by granting the motion for summary judgment.

Plaintiffs' reliance on *Franchi v. Boulger,* 12 Mass.App. 376, 425 N.E.2d 372 (1981), is misplaced. Unlike the case at bar, the plaintiffs in *Franchi* complained of damage caused by a retaining wall constructed and maintained by the trustees. The retaining wall in *Franchi* was distinct and separate from any individual unit and was maintained as a common element thereby falling within the realm of the trustees. The case at bar is distinguish-

able, however, because the flood retaining wall was constructed on a common element by individual unit owners to prevent damage to their particular condominium units. Point one is denied.

In their remaining points on appeal, plaintiffs challenge the trial court's order of July 7, 1983 and July 13, 1984 granting a mandatory injunction for the removal of the flood retaining walls and the greenhouse covers.

■ Our scope of review of this equitable counterclaim tried without a jury is to uphold the judgment of the trial court if the trial court's findings are supported by substantial evidence and are not against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Furthermore, the trial court's findings must not erroneously declare the law or apply the law. *Id.* Our review of the facts is in a light most favorable to the result reached. *McDermott v. Burpo*, 663 S.W. 2d 256, 258 (Mo.App.1983).

Plaintiffs argue a mandatory injunction is not regarded with judicial favor and should be granted only under compelling circumstances. Plaintiffs further question the propriety of the granting of the mandatory injunction by alleging that no provisions within the bylaws prevent a condominium unit owner from enclosing, decorating or landscaping a balcony, porch, patio or terrace. In addition, plaintiffs contend the bylaws do not require prior written consent of the Board of Managers to build retaining walls to prevent flooding or to cover retaining walls with greenhouse covers to prevent water from entering behind the retaining wall. Plaintiffs' last contention is that the Board of Managers did not perform sufficient acts to prohibit plaintiffs from building the retaining walls and greenhouse covers.

■ Although a mandatory injunction is not regarded with judicial favor and should be granted only under compelling circumstances, this remedy is justified due to the compelling circumstances of the case. In its order, the trial court mandated plaintiffs to remove the improvements from the common elements. Plaintiffs con-

structed these improvements without the Board's permission and in violation of the bylaws. Under these circumstances, the trial court properly issued an injunction mandating the removal of the improvements from the common elements.

Our research has not disclosed any cases on point in our jurisdiction, but the case, *Schmeck v. Sea Oats Condominium Ass'n*, 441 So.2d 1092 (Fla.Dist.Ct.App. 1983), is analogous to the facts of this dispute. In *Schmeck*, plaintiffs installed storm shutters across the exterior of their sliding glass doors and windows to protect the interiors of their units from water damage. At an association meeting, plaintiffs' request to install the storm shutters was denied. Plaintiffs, however, installed the shutters with full knowledge that they lacked permission to install and attach the shutters onto the common elements. *Supra*, at 1094–95. The lower court held that the unit owners violated the condominium bylaws by installing the storm shutters on their units and ordered plaintiffs to remove them. The appellate court affirmed the lower court's injunction mandating removal of the shutters, because they violated the bylaws. The factual circumstances of the case at bar are similar to those of *Schmeck* and support our decision to affirm the trial court's granting of the mandatory injunction in the case at bar.

Plaintiffs' challenge, questioning the propriety of the granting of the mandatory injunction because the bylaws contained no provisions preventing a condominium unit owner from enclosing, decorating or landscaping a balcony, porch, patio or terrace, is without merit. Plaintiffs contend § 4.3 of the Burtonwood Manor Bylaws grants to the unit owners an exclusive, perpetual easement to the patio adjoining the owner's unit. Section 4.2 provides:

*Easements to Unit Owners:* Perpetual easements are hereby established appurtenant to all units, for use by the owners thereof, their families, tenants, guests, invitees and servants, in and to all common elements. In addition thereto, each unit owner is hereby granted an exclusive perpetual easement to use and occu-

py any portion of any balcony, porch, patio or terrace, which adjoins his unit and to which he has sole access, provided, however, that no unit owner shall enclose, decorate or landscape any such balcony, porch, patio or terrace contrary to any rules or regulations established by the Board of Managers.

Based on the above provision and no rules providing otherwise, plaintiffs argue they have a right to exclusively use and occupy their patios. Moreover, plaintiffs claim since no rule or regulation explicitly prohibits the construction of a greenhouse, such construction is permissible.

Section 4.2 does not authorize the unit owners to enclose their patios in the absence of a formal rule or regulation just because the owners have an exclusive, perpetual easement to use and occupy their patios. This bylaw section makes the granting of an easement subject to the control of the Board of Managers. Plaintiffs requested the Board of Managers' approval concerning the improvements but the Board never approved nor authorized the construction of the improvements. Before building the improvements, plaintiffs never reviewed the bylaws.

Likewise, plaintiffs' argument is in direct contravention of § 7.1(1) of the condominium bylaws. Section 7.1 in relevant part provides:

The Board of Managers, for the benefit of all the unit owners, shall have the power: (1) To permit unit owners to construct a privacy fence or to make other exterior improvements, provided that the decision of the Board to approve or disapprove any proposed fence or other improvement shall be conclusive.

This section requires unit owners to obtain Board approval before making exterior improvements. Although § 7.1(1) does not explicitly cover retaining walls or greenhouse covers, these improvements are covered by the language of the section as other exterior improvements.

Plaintiffs further argue the bylaws in § 5.4 do not require prior written consent before building a retaining wall and covering the wall with a greenhouse cover. Section 5.4 of the bylaws specifically requires prior written consent of the Board of Managers before a unit owner is allowed to display exterior signs. By not explicitly listing retaining walls or greenhouse covers in § 5.4, plaintiffs argue the Board intended not to include these type of improvements in the specific prohibition, and therefore, no consent was necessary before building such improvements.

Although prior written consent of the Board is not required, as in the case where an owner wants to display an exterior sign, the bylaws in § 7.1(1) require an owner to obtain the consent of the Board before making any exterior improvements. Plaintiffs would have us construe the bylaw section in such a manner so as to require the Board to anticipate and specifically enumerate every imaginable prohibited use of the common elements. The unit owners jointly own an undivided interest in all of the common elements. The common elements are subject to the rights and privileges of the other unit owners under the bylaws of Burtonwood Manor. By making their improvements, plaintiffs attempted to convert a portion of the common elements for their own personal use, and such a taking of the common elements is forbidden by the bylaws and the applicable Missouri statute, § 448.050, RSMo 1983.

The case at bar is distinguishable from the case of *Bd. of Managers of Peppertree Square v. Ricketts*, 701 S.W.2d 767, 769 (Mo.App.1985), where the court found due to the similarity of a storm door to an awning, canopy or shutter "[i]t is reasonable to believe that the drafters of the by-laws would have included storm doors in the specific prohibition if the intent were to prohibit storm door installations." The *Ricketts* case is inapposite as it is based on the trial court's finding "that the addition of a storm door to the exterior of a unit is not an 'addition or alteration' within the meaning of the condominium by-laws." *Supra* at 768. In the case at bar, retaining walls and greenhouse covers are not similar to exterior signs, and so plaintiffs' argument that it would be reasonable to believe the drafters of the bylaws would have

included such improvements in the specific prohibition concerning exterior signs if the Board intended to prohibit such improvements is without merit.

Plaintiffs' last - contention alleges the Board of Managers did not perform sufficient acts to prevent plaintiffs from building the retaining walls and greenhouse covers. One of the plaintiffs discussed her flooding problem with the Board of Managers at the August 14, 1980 Board meeting. At the meeting, one Board member stated for the record his willingness to help plaintiffs solve their flooding problem. The Board of Managers assisted in solving the flooding problem by forcing the developer to build an auxiliary sewer system before granting him permission to build any more units in the condominium complex. Without further communication with the Board or Board approval, plaintiffs constructed the floodwalls and glass greenhouse covers in late September of 1980. After the completion of the improvements, plaintiffs sent a letter to the Board dated October 2, 1980 requesting payment for the improvements. The Board refused to pay the submitted bill and pointed out in its response the flooding problem was not created by the Board or its actions.

Without waiting for the Board's approval, plaintiffs took the matter into their own hands and constructed the improvements. To be entitled to an injunction requiring the removal of the improvements, the Board does not have to show they instructed plaintiffs not to construct the improvements nor does the Board have the burden to demonstrate they objected in advance to the building of the unauthorized improvements on the common elements. *See, Layman v. Southwestern Bell Tel. Co.,* 554 S.W.2d 477, 481 (Mo.App.1977). The failure of the Board to object cannot be implied to show their consent to the building of plaintiffs' improvements. *Supra,* at 481. Plaintiffs' contention the Board did not perform sufficient acts to prohibit plaintiffs from building retaining walls and greenhouse covers is without merit.

For the foregoing reasons, we affirm the granting of the motion for summary judg-

ment and the granting of the mandatory injunction ordering the removal of the flood retaining walls and glass greenhouse covers.

STEPHAN, P.J., and PUDLOWSKI, J., concur.