Lyle REED, et al., Plaintiffs–
Appellants,

v.

The SUNSET COVE CONDOMINIUM
OWNERS ASSOCIATION,
Respondent.

No. 27110.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 2006.

Motion for Rehearing or Transfer to
Supreme Court Denied Aug. 22, 2006.

Application for Transfer Denied
Sept. 26, 2006.

8. Relator's Motion to Dismiss the underlying case is denied.

Bryan O. Wade, Ginger K. Gooch, Husch & Eppenberger, LLC, Springfield, for appellants.

Jonathan D. Cope, The Styron Law Firm, Ozark, for respondent.

JOHN E. PARRISH, Judge.

James Bowlin, Shirley Bowlin, Lyle Reed, Nell Reed, Nick Weinsaft, Gert Gu-

drun Weinsaft, Harold Sellmeyer, Matt Kincaid, Julie Kincaid, Ronnie Chambers, Shermalyne Chambers, Bobby E. Seltz, Richard Oelze, Marilyn Oelze, John Thomas, Don Wessel, and Holly Schofield (plaintiffs) appeal a judgment that determined that owners of single family lots in certain real estate developments were entitled to membership in the Sunset Cove Condominium Owners Association (the association); that a special assessment by the association was valid; and that plaintiffs were not entitled to attorney fees. This court affirms.

In February 2004 the governing board of the association (the board) issued notice of a special assessment levied against the owners of units in multi-residence buildings for repairs to Building No. 4 of Sunset Cove Condominiums—Second Addition. The amount of the special assessment was $180,000. The amount that was levied on each unit owner in the multi-unit buildings was $2,812.50.

The parties who brought this action sought determination in the circuit court, among other things, that owners of lots on which individual residences could be situate were not members of the association, but that the sole members of the association were those persons having residences in multi-residence buildings in Sunset Cove's developments; that actions the association had taken with respect to the parties who brought the action were void. They also sought judgment for their attorney fees.

Sunset Cove Condominiums, a condominium development, was established in 1987. At that time it consisted of two ten-unit condominium buildings (Building 1 and Building 2) and a clubhouse. A condominium declaration was recorded in the office of Recorder of Deeds of Stone County by the developer, Sunset Cove, Ltd. Articles of Incorporation for the association, a not-for-profit corporation, were filed with the Missouri Secretary of State. *See* § 448.3–101, RSMo 1986.

By-laws of the association were filed in the office of Recorder of Deeds of Stone County. The by-laws declare that the purpose of the association is to govern the condominium property for which the association was formed. They provide:

All present or future owners or any other person that might use in any manner the facilities of the project located on the [condominium property] are subject to the regulations set forth in these By–Laws. The mere acquisition or rental of any of the condominium units (hereafter referred to as Units) or the mere act of occupancy of any of said units will signify that these By–Laws are accepted, ratified and will be complied with.

With respect to membership, the by-laws provide, "Any person on becoming a unit owner of a condominium unit shall automatically become a member of [the association] and be subject to these By–Laws."

Subsequent development of Sunset Cove included additional condominium buildings, townhomes and residential lots. Sunset Cove Townhomes—First Addition consists of two four-unit buildings (Buildings A and B). Sunset Cove Condominiums—First Addition is a twelve-unit building (Building C). Sunset Cove Condominiums—Second Addition is a twelve-unit building (Building 4). Sunset Cove Condominiums—Third Addition is a twelve-unit building (Building 5).

Sunset Cove Estates—First Addition, consisting of 30 residential real estate lots, was developed. An additional 30 residential real estate lots were added in Sunset Cove Estates—Second and Third Addition. Sunset Cove Estates—Fourth Addition added 35 residential real estate lots.

The final of those additions, Sunset Cove Condominiums—Third Addition and Sunset Cove Estates—Fourth Addition, were added in January 1995. A declaration was filed with respect to each addition after the establishment of the 1987 condominium in which the developer stated its intent to submit the real estate described in the document to a condominium form of ownership. *See* § 448.2–101.1, RSMo 1994.[1] The declarations with respect to the condominium buildings, townhomes, and residential lots are substantially identical. Each type of residence was defined as a condominium unit.

Declarations for each of the multi-unit buildings define unit as "a part of the property including one or more rooms, occupying one or more floors or a part or parts thereof, designed and intended for any type of independent use, and having lawful access to a public way." The definition of unit used in the declarations for the Sunset Cove Estates First, Second, Third and Fourth Additions, the single family residential real estate developments, was "a part of the property including one or more rooms, occupying one or more floors or a part or parts thereof, designed and intended for any type of independent use, and having lawful access to a public way, *or a separate parcel of real estate, also referred to as a lot.*" (Emphasis added.)

Declarations for Sunset Cove Condominiums and Sunset Cove Townhomes, First Addition, define a unit owner as persons "whose estates or interests, individually or collectively, aggregate fee simple absolute ownership of a unit." Declarations for the other parts of the development define unit owner or owner as "the person or persons whose estates or interests, individually or collectively, aggregate fee simple absolute ownership of a unit *and/or lot*." (Emphasis added.)

## Point I

■ Plaintiffs' first point on appeal contends "[t]he trial court erred in holding that lot owners are entitled to membership in [the association] because a single family residential lot owner is not permitted membership in a condominium owners association" because the association by-laws only permit unit owners to be members and lot owners are not unit owners. Plaintiffs contend the association by-laws and the Uniform Condominium Act preclude lot owners from being members of the association.

The developments that are the subject of this appeal were created after September 28, 1983; thus, the applicable statutes are §§ 448.1–101 to 448.1–120,[2] the Uniform Condominium Act. *See* § 448.1–102; *Randol v. Atkinson,* 965 S.W.2d 338, 341 (Mo.App.1998).

Section 448.1–103(29) states:

"**Unit**" means a physical portion of the condominium designated for separate ownership or occupancy, the boundaries of which are described pursuant to subdivision (5) of subsection 1 of section 448.2–105.

Section 448.2–105.1(5) requires that the declaration for a condominium contain "[a] description of the boundaries of each unit created by the declaration, including each unit's identifying number."

■ Neither § 448.1–103(29) nor § 448.2–105.1(5) limits the boundaries of a condominium unit to interior space as was required by the condominium law that gov-

---

1. § 448.2–101 was adopted, in the form that it existed in January 1995, in 1983. It was unchanged throughout that period and has remained unchanged since then.

2. References to statutes are to RSMo 2000 unless stated otherwise.

erned condominiums created before September 28, 1983, although a condominium may be limited to interior space.[3] Section § 448.2–102(1) explains what is part of the unit under the current law and what are parts of the common elements, *"[i]f walls, floors, or ceilings are designated as boundaries of a unit."* (Emphasis added.) The Uniform Condominium Act, therefore, broadened the area that could be included in a condominium unit. A condominium unit may be limited to interior space or it may be something more than interior space.

The Uniform Condominium Act that Missouri adopted is modeled after the uniform act set forth in Uniform Laws Annotated. A comment to the section of the model act that discusses the requirement for "substantial completion" in order for a condominium to be established, § 2–101, ULA (which is virtually identical to Missouri's § 448.2–101), states that nothing in the Act prohibits the definition of "unit" from including a real estate "lot."[4] Comment 11 to the model act states:

> The requirement of completion would be irrelevant in some types of condominiums, such as campsite condominiums or some subdivision condominiums where the units might consist of unimproved lots, and the airspace above them, within which each purchaser would be free to construct or not construct a residence. Any residence actually constructed would ordinarily become a part of the "unit" by the doctrine of fixtures, but

nothing in this Act would require any residence to be built before the lots could be treated as units.

ULA, § 2–101. Thus, the declarations that established Sunset Cove Estates, First Addition; Sunset Cove Estates, Second Addition; and Sunset Cove Estates, Third Addition, that consist of residential real estate lots established condominiums, each lot within each development constituting a unit. Point I is denied.

### *Point II*

Point II argues that the trial court erred in upholding the special assessment imposed by the association "because the assessment is contrary to the by-laws, the declarations, and the Missouri Uniform Condominium Act, in that: (A) The assessment is for reconstruction of defective construction and is outside the scope of [the association's] authority; (B) Any plan to reconstruct defective construction must be approved by 80% of the unit owners and said approval was not obtained here; (C) The assessment exceeds $250 and the procedure for approval of assessments in excess of $250 was not followed; (D) The assessment covers interior improvements that are the responsibility of the individual unit owner; and (E) The assessment covers limited common element improvements that are the responsibility of the owners in Building 4."

### *The Association's Authority*

▮▮▮ The association has the authority granted in the declaration by which the

---

**3.** § 448.010(10), RSMo 1994, defined "unit" with respect to condominiums created before September 28, 1983, as "a part of the property including one or more rooms, occupying one or more floors or a part or parts thereof, designed and intended for any type of independent use, and having lawful access to a public way."

**4.** § 448.2–101.1 states the requirement that a condominium shall be created by recording a

declaration in the same manner as a deed. § 448.2–101.2 requires condominiums with structural components and mechanical systems of buildings containing units thereby created to be "substantially completed in accordance with the plans, as evidenced by a recorded certificate of completion executed by a registered and licensed engineer or architect."

condominium was established and its by-laws. § 448.3–102.1(15). Condominium by-laws constitute the rules and regulations that govern the internal administration of the condominium complex. *Wescott v. Burtonwood Manor Condominium Ass'n Bd. Of Managers,* 743 S.W.2d 555, 558 (Mo.App.1987).

The trial court found: [5]

. . .

13. Paragraph 21(e) of the Declarations provides that the [association] may levy such assessments for the purpose of defraying the cost or [sic] repair or reconstructing the improvements in the event of their damage, as set forth in Paragraph 27.

14. Paragraph 15(b) of the Declarations provides, in part, that "Damage done to the interior or any part of a unit resulting from the maintenance, repair, emergency repair, or replacement of any of the common elements or as a result of emergency repairs within another unit shall be a common expense of all the owners; . . . All Damaged [sic] improvements shall be restored substantially to the same condition in which they existed prior to the damage. All maintenance, repairs and replacements of the common elements whether located inside or outside the units . . . shall be *the common expense of all of the owners.*["]

15. Paragraph 16(b) of the Declarations provides, in part, that "An owner shall maintain and keep in repair the interior of his own unit, including the fixtures thereof. All fixtures and equipment installed within the unit commencing at a point where the utilities enter the unit shall be maintained and kept in *good repair and condition by the owner* thereof; provided, however, that if any such fixtures and equipment are dam- aged as a result of an external force or cause, and if such damage is not covered by insurance, the cost of repair shall be an Association expense (a common expense of all the condominium unit owners.)"

. . .

Paragraph 14 of the trial court's conclusions of law (referring to paragraph 27 of the declarations as "Section 27") states:

Section 27 appoints the Association as the owners' representative to exercise such powers as are "necessary and appropriate" to repair and reconstruct damaged common elements and units. Section 27 defines repair and reconstruction as "restoring the improvement(s) to substantially the same condition in which they existed prior to damage . . ."

The trial court entered judgment declaring, on the bases of its findings of fact and conclusions of law, that "[t]he actions taken by the Association Board were reasonable, proper and necessary, and authorized by Missouri law and the Declarations and By–Laws at issue," and "[t]he assessment by Resolution of the board of January 31, 2004 is valid."

An engineering report found that the damage to Building 4 occurred because of inadequate support for the framing of the building. The report analyzed the damage as follows:

In this case, the damages throughout the 3–story condominium structure are the result of improper construction methods along the north foundation wall. Architectural plans specify that the north end of the floor joists are to be supported by a treated knee wall that is built upon the concrete footer of the

---

5. Declarations of the respective additions to the Sunset Cove developments are consistent with one another and with the original declaration's content and paragraph numbering.

foundation. The building was not constructed in this manner.

It stated the opinion, "If the construction methods had followed the architect's plan, it is likely that the observed damages would not have occurred." The engineering report concluded:

A. The damages to the condominium structure are a result of improper support of the framing and improper condensate drainage into the crawl space along the north foundation wall, and

B. The support framing was not built as specified in the architectural plan documents, and

C. The routing of the condensate lines was not specified in the plan documents, and

D. At the time of examination, the extent of movement and damages did not raise concern for immediate failure of the unit. If the problems are not corrected, further failures, possibly even collapse, may occur.

The trial court's determination that the damage for which the assessment was made was caused by an external force, slipping and settling due to construction defects, is supported by substantial evidence. It is a defect to which the following provision of paragraph 16(b) of the declarations applies, "[I]f [fixtures and equipment of the interior of a unit] are damaged as a result of an external force or cause, and if such damage is not covered by insurance, the cost of repair shall be an Association expense (a common expense of all of the condominium unit owners.)" The damage was a cost of repair not covered by insurance. It was, therefore, an expense under the terms of the declarations of the association.

The by-laws provide that the association shall be governed by its board. The board's authority includes "the powers and duties necessary for the administration of the affairs of the Association and for the operation and maintenance of the condominium project as a first class residential condominium property." The board has authority "[t]o enter into contracts to carry out their duties and powers." Its actions in contracting for the repairs and imposing the assessment for that purpose were within its powers and authority.[6]

*Requirement for Approval by 80% of the Unit Owners, Procedure for Assessment, Allocation to Interior Improvements and Responsibility of Owners in Building 4*

■ Plaintiffs' argument that the board could not proceed with the special assessment absent an approval by vote of 80% of the unit owners is based on their claim that what occurred was reconstruction, not repair. As stated in the discussion of board authority, the trial court's determination that the work to be performed constituted repairs, not reconstruction, is supported by substantial evidence. That determination is consistent with the engineering report that was obtained and admitted in evidence. The report, after identifying the nature of the damage that had occurred to Building 4, observed that although the inspection did not raise concern for immediate failure of the building, "[i]f the problems [were] not corrected, further failures, possibly even collapse, may occur." Since the building was stable at that point in time, i.e., there was not concern for immediate failure, and since problems were identified that could

---

6. Plaintiffs rely on *Wescott v. Burtonwood Manor Condo. Ass'n,* 743 S.W.2d 555 (Mo. App.1987), and *Pooser v. Lovett Square Townhomes Owners' Ass'n,* 702 S.W.2d 226 (Tx. App.1985), in support of part (A) of Point II. The holdings of those cases are dependent on their particular facts and the terms of their respective association by-laws.

be corrected to avoid subsequent failures, there was substantial evidence on which the trial court could find that the work that the board contracted to have done on Building 4 was for repair, not reconstruction.

Plaintiffs' argument that the board lacked authority to proceed because the assessment exceeded $250 is the same as their argument that approval of 80% of the unit owners was required in order for the board to proceed; that what was undertaken would constitute "additions, alterations, or improvements of or to the common elements and limited common elements by the Association." The trial court's finding was contrary to that argument. The trial court ascertained that the work that was required on Building 4 was within the purview of repairs.

Plaintiffs' arguments that the board lacked authority to make the repairs it undertook because it entailed interior "improvements" and responsibilities that were those of owners in Building 4 are similarly flawed. The damage to the interior of Building 4 was a consequence of the damages that occurred to the external parts of the building. The damages were not covered by insurance. Paragraph 16(b) of the declaration applies in that it provides "if ... fixtures and equipment are damaged as a result of an external force or cause, and if such damage is not covered by insurance, the cost of repair shall be an Association expense (a common expense of all of the condominium unit owners.)" Point II is denied.

*Point III*

Plaintiffs assert in Point III that the trial court erred in failing to award attorney fees "in that an award is just and proper here because [the association] failed to comply with the Act and [plaintiffs] were required to incur fees and costs to preserve their rights." There is no determination that the association did not comply with the act. Point III is moot.

The judgment is supported by substantial evidence. It is not against the weight of the evidence. The judgment neither erroneously declares nor applies the law. *See Stewart v. Jones,* 90 S.W.3d 174, 178 (Mo.App.2002). It is, therefore, affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.