**FIGARI & DAVENPORT, L.L.P. and William J. Albright, Plaintiffs,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. 3:92–CV–1814–X.**

United States District Court, N.D. Texas, Dallas Division.

March 11, 1994.

Mark T. Davenport, Doug K. Butler, Ernest E. Figari, Jr., Figari & Davenport, Dallas, TX, for plaintiffs.

Edwin E. Wright, III, Marston Alexander, Attorney at Law, Stradley & Wright, John Patrick Polewski, Smith & Polewski, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the court are:

1) Plaintiffs' Motion for Summary Judgment and Brief in Support, filed January 29, 1993;

2) Defendant's Response, filed February 18, 1993;

3) Plaintiffs' Reply, filed March 5, 1993;

4) Defendant's Motion for Summary Judgment and Brief in Support, filed January 29, 1993;

5) Plaintiffs' Response, filed February 18, 1993; and

6) Defendants' Supplemental Memorandum, filed March 18, 1993.

After carefully considering the motions, briefs, supporting evidentiary submissions, and applicable law, the court determines that no issues of material fact exist with respect to the issues raised in the motions for summary judgment. Therefore, Plaintiffs' Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.

### BACKGROUND

This is a suit about whether a law firm and one of its attorneys were covered under a legal malpractice policy. Defendant Continental Casualty Company ("Continental") issued its lawyers professional liability policy number 4971399 ("the Policy") to Plaintiff Figari & Davenport, L.L.P. ("F & D") with a policy term of November 1, 1990 to November 1, 1991. F & D partner William Albright ("Albright") was covered under the Policy. The Policy was renewed from November 1, 1991 through November 1, 1992 and again from November 1, 1992 through November 1,

1993. The Policy was in full force and effect at all relevant times.

Albright represented the plaintiff in a lawsuit filed in Eagle County, Colorado styled *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail and Arrowhead at Vail, Inc.*, a lawsuit involving a land development deal that had fallen through. After extensive discovery, Albright signed a disclosure certificate required by Colorado law which carried Rule 11 duties.[1] The court found that no enforceable contracts existed between the parties and on December 21, 1990 granted the defendants' motion for summary judgment, dismissing all of the plaintiff's claims. Although another of plaintiff's attorneys represented to the court that a *lis pendens* on the disputed property would be dropped by the plaintiff if its claims were dismissed, the *lis pendens* was not released as promised until the defendants filed a motion for the release.

On January 7, 1991, counsel for the defendants in that case filed a motion seeking sanctions and attorneys fees on the basis that the plaintiff's claims were groundless and frivolous. F & D and Albright tendered this claim to Continental for a defense under the Policy. Continental refused to defend the claim or indemnify Albright and F & D based upon exclusions in the policy for any claim arising out of "any dishonest, fraudulent, criminal or malicious act or omission" and for "any fine, penalty, or claim for return of fees." Albright defended himself against the defendants' claim.

On July 31, 1992 the Colorado state court filed an order entering judgment against Albright and F & D, jointly and severally, for $772,000. Under the Colorado fee-shifting statute, the court awarded the defendants fees and expenses incurred in defending against the plaintiff's claims since the date which the court found that the plaintiff should have realized the claims to be without substantial justification. Although the court remarked that Albright had violated Rule 11,

---

1. Like its federal counterpart, Colorado Rule of Civil Procedure 11 requires an attorney to certify by his or her signature that a pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not filed for any improper purpose such as harassment, unnecessary delay, or to needlessly increase the cost of litigation.

the court's award was based solely on the fee-shifting statute. After subsequent re-hearings, on October 30, 1993, the court modified its earlier order concerning Albright and F & D. The court concluded that the plaintiff's claims lacked substantial justification, and that defendants should recover a portion of their attorney fees under the fee-shifting statute, but reduced the amount previously awarded against Albright and F & D from $772,000 to $22,000.

Albright and F & D filed suit against Continental in state court in August 1992, and the case was removed to this court the following month. Both sides have filed cross-motions for summary judgment. Albright and F & D seek partial summary judgment that: 1) Continental has breached its duty to defend Albright and F & D against the claims from the Colorado lawsuit; 2) Continental is obligated to defend Albright and F & D on appeal should they elect to allow Continental to do so; and 3) Continental is obligated to indemnify Albright and F & D in the event the Colorado judgment is affirmed on appeal. Continental asks the court to declare that Continental owed no duty to defend or indemnify Albright and F & D against the allegations in the Colorado suit because those allegations did not fall within the Policy's coverage.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law will identify which facts are material. *Id.* at 248, 106 S.Ct. at 2510.

The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.*, 943

F.2d 589, 591 (5th Cir.1991), *cert. denied,* ——— U.S. ———, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* ——— U.S. ———, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment. Fed. R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

## DISCUSSION

The court's subject matter jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332, and the court thus looks to state law as the rule of decision for substantive matters. 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where no state court has decided a particular question at issue, the federal court must make an educated guess as to how the state's supreme court would rule. *Nobs Chem., U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 214 (5th Cir. 1980). All parties agree that the law of Texas should be applied to the insurance

policy at issue in this case, and that there is not as yet any Texas case directly addressing the issue of whether sanctions against an attorney are covered under a legal malpractice policy.

The parties presented the court with three cases from other jurisdictions as persuasive authority concerning this issue. In *O'Connell v. Home Ins. Co.*, No. 88–3523, 1990 WL 137386 (D.D.C.1990), the attorneys had sanctions imposed against them for violations of Rule 11, but their insurer refused to defend or indemnify because it considered the sanctions outside the scope of "damages" covered by the professional liability policy. The court stated that it refused to consider all Rule 11 sanctions as punitive, meant to be a fine or penalty. The court determined that the sanctions imposed in the underlying suit were not intended to be a fine or penalty, but were meant instead to compensate the defendant for having to defend a baseless lawsuit, so that the insurer had the duty to defend and to indemnify the attorneys.

In *Bar Plan v. Campbell*, No. 57946, 1991 WL 179443 (Mo.App.1991), the court determined that sanctions for reimbursement were within the definition of "damages" in the professional liability policy and were not considered a statutory penalty or a fine. The court concluded in a well-reasoned opinion that it must examine the attorney's conduct which caused the imposition of the sanctions to evaluate whether it fell within the policy exclusions. Based upon the attorney's deliberately wrongful acts, the insurer was required to defend but not indemnify him under the policy.

The opposite result was reached in *Page Wellcome, Professional Serv. Corp. v. Home Ins. Co.*, 758 F.Supp. 1375 (D.Mont.1991), *aff'd*, 993 F.2d 887 (9th Cir.1993). In that case, Wellcome was sanctioned in the amount of $20,000 for disobeying the court's orders during voir dire, examination of witnesses, and argument to the jury. The court found that the sanction imposed was not "damages" but a "penalty" so that there was no duty to defend or indemnify the attorney.

In addition, the court has reviewed an unpublished decision from the Eastern District of Virginia that was affirmed by the Fourth Circuit, *Green v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 896 F.2d 546, 1990 WL 13017 (4th Cir.1990). In that case, the district court found that, because the professional malpractice insurance policy specifically excluded payment for sanctions, the insurer did not have to indemnify the attorneys for $15,000 to settle Rule 11 sanctions. As the policy was ambiguous concerning the duty to defend the claim, the federal court in Virginia resolved the ambiguity against the insurer who had drafted the policy and held that there was a duty to defend. The court finds these cases helpful but not dispositive to the resolution of this issue under Texas insurance law.

*The Duty to Defend*

Albright and F & D assert that Continental has breached its duty to defend them against the claims brought by the defendants in the Colorado lawsuit, and that Continental should defend them in the appeal of that case should Albright and F & D elect to allow Continental to do so. Continental maintains that it had no duty to defend the allegations against Albright and F & D in the Colorado suit based upon certain exclusions in the Policy:

We will not defend or pay, under this Coverage Part for:

D. any claim arising out of:

   3. any dishonest, fraudulent, criminal or malicious act or omission by you or any of your partners, officers, stockholders or employees. This exclusion does not apply to an act or omission which is the basis of a malicious prosecution claim;

G. any fine, penalty, or claim for return of fees;

H. any punitive or exemplary amounts.

Continental maintains that the allegations set forth in the Colorado defendants' motion for sanctions constitute claims for a penalty or punishment which are clearly excluded under the Policy.

Under Texas law, an insurer's duty to defend is determined by the allegations of the third party considered in the light of the policy provisions, regardless of

the truth or falsity of such allegations. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965); *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). Texas courts follow the "eight corners" or "complaint allegation" rule when determining the duty to defend, which requires the court to examine only the allegations in the third party's pleading and the insurance policy to determine whether the duty to defend exists. *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd). In applying this rule, the court may indulge the most liberal interpretation of the allegations of which they are susceptible and doubts as to the meaning of the allegations are to be resolved in favor of the insured and coverage. *Heyden Newport* at 26; *Continental Sav. Ass'n v. United States Fidelity and Guar. Co.*, 762 F.2d 1239, 1244 (5th Cir.1985), *amended*, 768 F.2d 89 (5th Cir.1985).

The duty to defend is not affected by facts ascertained before the third party's pleading, facts developed in the litigation, or by the ultimate outcome of the suit. *American Alliance Ins.* at 154. Thus, in analyzing Continental's potential duty to defend Albright and F & D, the court must examine only the motion for sanctions itself, without reference to the Colorado court's subsequent rulings. If the third party only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend regardless of the legal theories involved in the case. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982).

Guided by these principles, the court examines the allegations by the defendants against Albright and F & D in the motion for sanctions.[2] The defendants' allegations were based upon the Colorado fee-shifting statute as well as Colorado Rule 11, and sought to recover their reasonable expenses, including attorneys' fees, in defending against the plaintiff's claim and in removing the *lis pendens* upon certain property. In essence, the

defendants asked to be restored to the position they were in before Moore's litigation commenced. The Colorado fee shifting statute provides that a court may award "reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." Colo.Rev.Stat.Ann. § 13–17–102(2). The standard is defined in this way:

> The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure or a designation by a defending party under section 13–21–111.5(3) that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

Colo.Rev.Stat.Ann. § 13–17–102(4).

In the motion for sanctions, the defendants claimed that Albright had signed a disclosure certificate, carrying Rule 11 implications, in which he continued to assert that the plaintiff's claims were well grounded in fact and law, even though he had reviewed the relevant documents and attended several days of the principals' depositions in which the claims were revealed to lack merit. Although Rule 11 "imposes a personal duty on the attorney to stop, think and investigate before filing a pleading," *Weir v. Lehman Newspapers, Inc.*, 105 F.R.D. 574, 576 (D.Colo.1985), the defendants maintained that Albright failed to fulfill this duty or he would have realized that his clients had no cognizable claims. Instead of dismissing the plaintiff's complaint, Albright vigorously opposed the defendants' motion for summary

---

**2.** The lengthy motion also sought sanctions jointly and severally against two other attorneys who had represented the plaintiff. This court's analysis isolates for review only the claims against Albright and F & D.

judgment. Finally, there are references in the motion to plaintiff's and counsel's bad faith in refusing to release the *lis pendens* and to discovery abuse, but those allegations did not specifically name Albright.

Whether Continental had a duty to defend Albright and F & D thus turns on whether Albright's conduct, as alleged in the motion for sanctions, could be considered "dishonest, fraudulent, criminal or malicious," and whether the sanctions sought constitute a "fine" or a "penalty." Presented with the motion for sanctions, Continental determined that the allegations therein did not state a claim against Albright and F & D for which there was coverage under the Policy. This court disagrees with Continental's assessment, and holds that Continental did indeed have a duty to defend its insureds against the claims made against them in the Colorado litigation.

■■■■ A careful examination of the allegations reveals that, in essence, the defendants complained that Albright believed in the validity of his client's case after the point at which an objectively reasonable attorney would have given up and dismissed the case. The court finds nothing "dishonest, fraudulent, criminal or malicious" in these allegations for Continental to deny a duty to defend on this basis. Phrased another way, the legal malpractice policy at issue in this case covers sins of the head such as negligence rather than sins of the heart such as criminal conduct. Albright's unreasonable belief in his client's losing case belongs to the former category and not the latter. As the court in the Missouri case observed:

> The policy before us is a malpractice policy intended to protect lawyers from the results of their negligent acts while acting in their capacities as attorneys. It loses much of its value if it fails to provide coverage for negligent conduct which might result in sanctions being imposed pursuant to Rule 11 or a state court equivalent. It is not enough, therefore, to contend that the imposition of sanctions alone is sufficient to preclude coverage. The conduct which caused the imposition of sanctions must be determined and evaluated to establish that it constitutes an action

by the attorney involved delineated in [the policy exclusion].

*Bar Plan v. Campbell,* 1991 WL 179443 at *3. Under Texas law, the court must resolve doubts as to the meaning of the allegations in favor of the insured and coverage.

■■■■ Continental maintains that, because the defendants sought sanctions against Albright and F & D under Colorado Rule 11 and the fee-shifting statute, Continental has no duty to defend. Continental equates a "sanction" with a "penalty," which is excluded under the policy, and asks the court to stop there without further inquiry. The court views this reasoning as too simplistic, and declines to assume that all "sanctions" are fines or penalties. A sanction may be a fine or penalty, but does not have to be. The court must examine the relief sought, rather than merely perusing the caption of the pleading.

■■■■ Albright and F & D assert that the Policy's exclusion clause is ambiguous. Whether an ambiguity lurks in an insurance policy is a question of law for the court to decide. *Continental Sav.,* 762 F.2d at 1245. An ambiguity occurs when two or more inconsistent interpretations exist, both of which are fair and reasonable. *Entzminger v. Provident Life & Accident Ins. Co.,* 652 S.W.2d 533, 536 (Tex.Civ.App.—Houston [1st Dist.] 1983, no writ). The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991); *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). The court concludes that the insureds' construction that a "sanction" is not a "fine" or "penalty" is a reasonable interpretation, and holds that the Policy is ambiguous as to whether the terms "fine" or "penalty" or "punitive or exemplary amount" encompass the sanctions *at issue in this case.* If Continental intends to exclude "sanctions" (a legal term of art applied in contexts such as this) from coverage under its legal malpractice policies, it can easily

resolve this ambiguity by adding the word "sanctions," with a clear definition, to the other listed exclusions.

■ Regardless of the legal theory submitted or the moniker of the pleading, the allegations presented in the motion for sanctions speak of *reimbursement, not fines or penalties.* Albright's insistence on vigorously prosecuting the case when he should have known his client would lose cost the defendants attorneys fees and expenses that they felt entitled to recover. The defendants sought only to be restored to the position they were in before the plaintiff's suit was filed, and nowhere in the motion for sanctions sought any fine, or penalty, or punitive damages. The motion concluded with the declaration that "Plaintiff and its counsel tried to create a case against Defendants out of nothing" in violation of Rule 11 and the fee-shifting statute. This accusation is analogous to a claim for malicious prosecution, a cause of action which is specifically *not* excluded under the policy. The court holds that Continental had a duty to defend Albright and F & D against the claims against them in the motion for sanctions.

*The Duty to Indemnify*

■ Having determined that Continental had a duty to defend Albright and F & D against the allegations set forth in the motion for sanctions, the court turns to the more narrow question of whether Continental has a duty to indemnify its insureds Albright and F & D. In contrast to the duty to defend, the duty to indemnify is not based upon the third party's allegations, but upon the actual facts which underlie and result in the liability. *American Alliance Ins.* at 154; *Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 828 (Tex.App.—Dallas 1992, writ denied). The resolution of the duty to indemnify is thus dependent upon this court's examination of the Colorado court's rulings concerning the motion for sanctions rather than the motion itself.

The Colorado court's original order in July 1992 entered judgment against Albright and F & D jointly and severally for $772,000. Under the Colorado fee-shifting statute, the court awarded the defendants fees and ex-penses incurred in defending against plaintiff Moore's claims since August 1, 1990, the date which the court found that Moore should have realized the claims to be without substantial justification. Discussing the disclosure certificate, the court stated that "Albright, as signer, violated Rule 11 standards in that by that time the action clearly was not well grounded in fact. The preponderance of the evidence is that by then its purpose was improper, to delay and needlessly increase the cost of litigation." The court also referred to discovery abuse by Albright. The court sanctioned Albright's behavior under the fee-shifting statute, while remarking that Rule 11 would have provided an additional basis for the recovery of attorneys fees and expenses. In November 1992 the court clarified the previous order to emphasize that the court's award was based exclusively on the fee-shifting statute.

After subsequent rehearings, in October 1993, the Colorado court modified its earlier order concerning Albright and F & D. The court found that, although the facts at the time of filing the lawsuit did not indicate the case was without merit, "after extensive discovery, facts undermining the claims eventually became reasonably available to the parties." The court did not find that the action was prosecuted in bad faith. Based on these findings, the court concluded that "Plaintiff's claims lacked substantial justification, that Defendants' Motion insofar as it is based upon those provisions of the Statute regarding the maintenance of frivolous or groundless claims should be granted, and that Defendants should recover a portion of their attorney fees under the Statute." The court reduced the amount previously awarded against Albright and F & D under the Colorado fee-shifting statute from $772,000 to $22,000.

■ The court concludes that Continental has a duty to indemnify Albright and F & D for the fees and expenses they must pay to the defendants in the Colorado litigation under the fee-shifting statute as reimbursement for having to defend a baseless lawsuit. The Colorado court's order imposing reimbursement by Albright and F & D of attorneys fees and expenses is encompassed by the

**522**

coverage agreement in the Policy. Although discovery abuse could arguably be considered "dishonest" or "malicious" and therefore excluded, the Colorado court specifically did not find that the litigation was conducted in bad faith. The court's primary focus was on Albright's continuing to advance his client's claims which he should have realized lacked substantial justification, conduct this court considers to be founded in poor judgment or negligence rather than dishonesty or malice. As the discovery abuse and the prosecution of a groundless lawsuit were independent reasons for the Colorado court's award of attorneys fees and expenses, under Texas law the insurer is liable. *Guaranty Nat'l Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 137 (5th Cir.1990). Applying Texas insurance law to the issues presented in this case, the court makes an "educated guess" that the Supreme Court of Texas would determine that, under the Policy, Continental had a duty to defend and to indemnify its insureds Albright and F & D from the allegations in the Colorado lawsuit. Summary judgment is thus granted in favor of Albright and F & D regarding both the duty to defend and the duty to indemnify.

### CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment is GRANTED, and Defendant's Motion for Summary Judgment is DENIED. The case shall proceed to trial on Plaintiffs' remaining causes of action. Within 21 days of the date of this Order, the parties are ORDERED to submit to the court a brief joint status report providing a requested trial date and an estimate of trial length.

SO ORDERED.