ACCEPTANCE INSURANCE
COMPANY, Plaintiff,

v.

Melanni WALKINGSTICK, Individually
and as Next Friend of Gabriel Walk-
ingstick, Maria Espinosa, Daniel Espi-
nosa, and Weyel L. Foster and Nguyen
Phung Kim, Individually and doing busi-
ness as Harrisburg Country Club, Defen-
dants.

Civ. A. No. H–94–3683.

United States District Court,
S.D. Texas.

May 24, 1995.

George T. Jackson, Bush & McCaffrey, Houston TX, for plaintiff.

David J. Willis Houston, TX, for defendants.

### FINAL JUDGMENT

HUGHES, District Judge.

1. This court adopts the memorandum and recommendation of the United States Magistrate Judge signed April 25, 1995.

2. Acceptance Insurance Company has no duty to defend, indemnify, or provide insurance coverage to Melanni Walkingstick, Individually and as Next Friend of Gabriel Walkingstick, Maria Espinosa, Daniel Espinosa, and Weyel L. Foster and Nguyen Phung Kim, Individually and doing business as Harrisburg Country Club.

### MEMORANDUM AND RECOMMENDATION

MARCIA A. CRONE, United States Magistrate Judge.

Pending before the court is Plaintiff Acceptance Insurance Company's ("Acceptance") Motion for Summary Judgment (# 8). Acceptance moves for summary judgment on the issue of its obligation to defend, indemnify, or provide coverage for Defendants Melanni Walkingstick ("Melanni"), Gabriel Walkingstick ("Gabriel"), Maria Espinosa ("Maria"), Daniel Espinosa ("Daniel"), Weyel Foster ("Foster"), Nguyen Phung Kim ("Kim"), and Harrisburg Country Club ("HCC") in a wrongful death and survivorship action filed in state court. Having re-viewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Acceptance's motion for summary judgment should be granted.

### I. *Background.*

On November 1, 1993, Melanni, Gabriel, Maria, and Daniel (collectively "the Walkingsticks") filed a wrongful death and survivorship action against Foster, Kim, and HCC in state court to recover for the death of Carlos Espinosa ("Espinosa"). Melanni is the widow and Gabriel is the minor son of Espinosa, and Maria and Daniel are the parents of Espinosa. According to the Walkingsticks, Espinosa died as a direct and proximate result of injuries he sustained when he was shot in the chest while a patron at HCC on November 2, 1991.

In their state court petition, the Walkingsticks assert that at approximately 8:45 p.m., a disgruntled patron of HCC entered the establishment and started an altercation which resulted in the death of one patron, the injury of another, and the mortal bullet wound to Espinosa. A .25 caliber bullet entered Espinosa's abdominal cavity and perforated the left lobe of the liver, the pancreas, and the abdominal aorta. Espinosa was pronounced dead at 10:20 p.m. on November 2, 1991. The Walkingsticks seek to recover for the pecuniary loss, loss of society and companionship, and mental anguish which they have suffered as a result of Espinosa's death. They also seek compensatory damages for Espinosa's pain and suffering between the time of the shot and the time of his death, as well as the medical expenses, ambulance service expenses, and funeral and burial expenses accruing from Espinosa's injury and subsequent death.

HCC is a business engaged in the sale of food and liquor and is owned and/or operated by Foster and Kim. In the state petition, the Walkingsticks allege that Espinosa was a business invitee of HCC and, although he was a minor, was allowed to purchase and consume liquor while patronizing the club. The Walkingsticks assert that Foster, Kim, and HCC were negligent in: (1) employing staff incapable of responding to a disagree-

ment in such a manner as to prevent the use of deadly force on patrons; (2) failing to provide proper training to employees who are expected to respond to situations which may lead to the use of deadly force while in the course and scope of their employment; (3) failing to employ trained professional security to prevent altercations in which the use of deadly force is foreseeable; and (4) allowing a minor on the premises, selling him liquor, and permitting him to consume it at the club. They further allege that Kim was negligent in entrusting the business premises to inexperienced staff and personnel at the time of the incident in question. The Walkingsticks contend that Foster's, Kim's, and HCC's negligence proximately caused the assault which resulted in the injury and subsequent death of Espinosa.

Acceptance insured Kim d/b/a HCC at the time that the shooting occurred. Following the filing of the state court action, HCC contacted Acceptance and requested a defense. Acceptance provided a defense to HCC under a reservation of rights, including the right to contest coverage through a declaratory judgment action. On October 28, 1994, Acceptance filed the instant declaratory judgment action seeking a declaration that it does not owe the defendants coverage under its policy. Acceptance presently moves for summary judgment on this issue.

Acceptance filed its motion for summary judgment on February 8, 1995. The defendants' response was due on or before March 3, 1995. Today, some two months later, the defendants have not responded to the plaintiff's motion, despite the fact that they were given notice that a response was overdue through Acceptance's notice of no response to the plaintiff's motion for summary judgment filed March 13, 1995.

## II. *Analysis.*

### A. *The Applicable Standard.*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to the nonmovant's case on which it bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *The Duties to Defend and Indemnify.*

█ Insurers have a duty to defend their policyholders in actions which assert claims potentially covered by the insurance policy. *Gulf States Ins. Co. v. Alamo Carriage Serv.,* 22 F.3d 88, 90 (5th Cir.1994); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993); *Enserch Corp. v. Shand Morahan & Co., Inc.,* 952 F.2d 1485, 1492 (5th Cir.1992); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965). In Texas, a court determining an insurer's duty to defend its insured follows the "eight corners" rule. *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 255 (Tex.App.— Dallas 1993, writ denied). Under this rule, a court looks only to the pleadings and the

insurance policy at issue to determine whether a duty to defend exists. *Gulf States Ins. Co.*, 22 F.3d at 90; *Gulf Chem. & Metallurgical Corp.*, 1 F.3d at 369; *Enserch Corp.*, 952 F.2d at 1492; *Cullen/Frost Bank*, 852 S.W.2d at 255; *Fidelity & Guar. Ins. Underwriters, Inc.*, 633 S.W.2d at 788; *Heyden Newport Chem. Corp.*, 387 S.W.2d at 24.

For such a duty to arise, "the pleadings must allege a claim that is 'potentially' covered by the applicable policy." *Gulf States Ins. Co.*, 22 F.3d at 90; *Enserch Corp.*, 952 F.2d at 1492; *Fidelity & Guar. Ins. Underwriters, Inc.*, 633 S.W.2d at 788; *Heyden Newport Chem. Co.*, 387 S.W.2d at 24. In making this analysis, a court may not consider the truth or falsity of the allegations in the underlying pleadings. *Enserch Corp.*, 952 F.2d at 1492; *Cullen/Frost Bank*, 852 S.W.2d at 255; *Argonaut S.W. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973); *Heyden Newport Chem. Corp.*, 387 S.W.2d at 24. An insurer does not have a duty to defend, however, when the plaintiff's complaint makes allegations which, if proven, would place the plaintiff's claim within an exclusion from coverage. *Gulf States Ins. Co.*, 22 F.3d at 90; *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); *Holmes v. Employers Cas. Co.*, 699 S.W.2d 339, 340 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Fidelity & Guar. Ins. Underwriters, Inc.*, 633 S.W.2d at 788.

In contrast to the duty to defend, the duty to indemnify is not based upon a third party's allegations, but upon the actual facts which underlie and result in the liability. *Figari & Davenport v. Continental Cas. Co.*, 846 F.Supp. 513, 521 (N.D.Tex.1994), *vacated pursuant to settlement*, 864 F.Supp. 11 (N.D.Tex.1994); *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd); *Heyden Newport Chem. Corp.*, 387 S.W.2d at 25. An insurer is not obligated to indemnify its insured, however, when the policy at issue does not provide coverage for the claims made against the insured. *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir.1993); *see also S.S. v. State Farm Fire & Cas. Co.*, 808 S.W.2d 668, 671–72 (Tex.App.—Austin 1991, writ granted), *aff'd*, 858 S.W.2d 374 (1993).

## C. *Interpretation of Insurance Policies.*

Under Texas law, interpretation of insurance contracts is governed by the same rules that apply to the interpretation of other contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994); *Gomez v. Hartford Co.*, 803 S.W.2d 438, 441 (Tex. App.—El Paso 1991, writ denied) (citing *United States Fire Ins. Co. v. Aetna Cas. Co.*, 781 S.W.2d 394, 398 (Tex.App.—Houston [1st Dist.] 1989, no writ)). The contract is considered as a whole, with each part to be given effect. *Forbau*, 876 S.W.2d at 133; *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex.1965). Specific provisions in the contract control over general statements of coverage. *See Forbau*, 876 S.W.2d at 133; *see also* 3 Arthur L. Corbin, Contracts §§ 545–54 (1960). The terms used in an insurance contract are given their ordinary and generally accepted meaning, unless the policy shows the words were meant in a technical or different sense. *Tri County Serv. Co. v. Nationwide Mut. Ins. Co.*, 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied); *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex.1979). After considering the rules of interpretation, summary judgment is generally appropriate in cases where the language at issue in the contract is unambiguous. *Tri County Serv. Co.*, 873 S.W.2d at 721 (citing *Phillips v. Union Bankers Ins. Co.*, 812 S.W.2d 616, 617 (Tex.App.—Dallas 1991, no writ)).

## D. *The Insurance Policy at Issue.*

Acceptance claims that it is not required to defend, indemnify, or provide coverage for the defendants because coverage on the claims asserted in the state court action is specifically excluded by the terms of the insurance policy at issue in this case. The policy contains exclusions barring coverage under certain circumstances, including assault and battery and liquor liability exclusions.

### 1. *The Assault and Battery Exclusion.*

The insurance policy in question contains an exclusion precluding coverage for "Bodily Injury, including death, and/or Property Damage arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person" ("the assault and battery exclusion"). Courts interpreting assault and battery exclusionary clauses similar to the one at issue in this case have held the clause to be clear and unambiguous. *See United Nat'l Ins. Co. v. Entertainment Group, Inc.*, 945 F.2d 210, 214 (7th Cir.1991); *Audubon Indem. Co. v. Patel*, 811 F.Supp. 264, 265 (S.D.Tex.1993); *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536, 538 (Tex.App.—Dallas 1989, writ denied); *Tarrant County Ice v. Equitable Gen. Life Ins. Co.*, 662 S.W.2d 129, 131–32 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

■ Assault and battery exclusionary clauses exclude coverage of all claims arising out of an assault and battery regardless of the cause. *See United Nat'l Ins. Co.*, 945 F.2d at 214; *Audubon Indem. Co.*, 811 F.Supp. at 265; *Garrison*, 765 S.W.2d at 538; *Tarrant County Ice*, 662 S.W.2d at 132. For instance, in *Garrison*, the Texas court of appeals held that the assault and battery exclusion contained in a restaurant's insurance policy precluded coverage for claims made by a couple attacked by an unknown assailant in the parking lot of the restaurant because the plaintiffs would never have brought the lawsuit absent the assault and battery committed by the unknown assailant. *Garrison*, 765 S.W.2d at 538. Moreover, in *Audubon Indem. Co.*, Judge David Hittner held that the assault and battery exclusion in an insurance policy excludes coverage of any damages arising out of an assault and battery as a matter of law, even if the legal theory under which the insured is found liable is negligence. *Audubon Indem. Co.*, 811 F.Supp. at 265.

■ In the instant case, Acceptance seeks a declaration that the assault and battery clause contained in its insurance policy with Kim and HCC precludes coverage of the defendants. While the defendants did not respond to Acceptance's motion for summary judgment, it is apparent from the petition filed in state court that the Walkingsticks would never have brought negligence claims against Foster, Kim, and HCC absent the assault and battery committed by a third party on Espinosa while he was a patron of HCC. Accordingly, the assault and battery clause contained in the insurance policy at issue bars coverage for the negligence claims made by the Walkingsticks in the state action.

### 2. *The Liquor Liability Exclusion.*

The policy also excludes coverage for bodily injury or property damage for which the insured may be held liable:

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

   (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

   (ii) by reason of selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the insured as an owner or lessor described in (2) above ("the liquor liability exclusion").

■ This exclusionary clause is clear and unambiguous. *See Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86, 89 (Tex.App.—Fort Worth 1993, writ denied); *Gomez v. Hartford Co.*, 803 S.W.2d 438, 442 (Tex.App.—El Paso 1991, writ denied); *Thornhill v. Houston Gen. Lloyds*, 802 S.W.2d 127, 128 (Tex.App.—Fort Worth 1991, no writ). It bars coverage of all claims arising out of the business of selling or serving alcohol. *See Western Heritage Ins. Co.*, 998 F.2d at 314–15; *Abe's Colony Club, Inc.*,

852 S.W.2d at 89; *Thornhill,* 802 S.W.2d at 130.

 In the state action, the Walkingsticks allege that Foster, Kim, and HCC were negligent in allowing a minor, Espinosa, on the premises, selling him liquor, and permitting him to consume it at the club. It is undisputed that Foster, Kim, and HCC were engaged in the business of selling and serving alcoholic beverages and that the Walkingsticks' claims in the state court action are premised in part upon such activities. Hence, the liquor liability exclusion contained in the policy at issue specifically bars coverage for these negligence claims asserted by the Walkingsticks.

### III. *Conclusion.*

This court recommends that plaintiff's motion for summary judgment be granted. Acceptance was not obligated to defend, indemnify, or provide coverage for the defendants in the state action against the Walkingsticks' negligence claims, as they are barred as a matter of law by the assault and battery and liquor liability exclusions in the insurance policy.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties. Under Fed.R.Civ.P. 72, the parties have ten days from receipt to file specific, written objections to the Memorandum and Recommendation. Failure to file objections bars an attack on the factual findings on appeal. The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208–1010. Copies of the objections must be mailed to the opposing parties and to the chambers of the magistrate judge, P.O. Box 610070, Houston, Texas 77208.

SIGNED at Houston, Texas on this 25th day of April, 1995.