

# SUPREME COURT OF MISSOURI
# en banc

DEANNA COPELAND,                          )
                                          )
     Appellant,                          )
                                          )
v.                                        )    No. SC94804
                                          )
LUCAS WICKS,                              )
                                          )
     Respondent.                         )
                                          )

### APPEAL FROM THE CIRCUIT COURT OF LINCOLN COUNTY
The Honorable David Ash, Judge

*Opinion issued July 21, 2015*

Deanna Copeland ("Mother") appeals from the trial court's grant of summary judgment in favor of Lucas Wicks ("Detective") on her malicious prosecution and 42 U.S.C. § 1983 claims. She argues Detective was not entitled to summary judgment because the statements he made in his probable cause affidavit were intentionally false or made with a reckless disregard for the truth. Because there was no evidence that Detective acted with malice, he was entitled to judgment on the malicious prosecution claim. Detective was also entitled to qualified immunity on the § 1983 claim because there was probable cause to believe Mother had committed a criminal offense. The trial

court's judgment is affirmed.

## Factual Background

Detective, a deputy sheriff in Lincoln County, was asked by the division of family services to investigate the possible abuse of a child who was approximately two years old. DFS informed him that a children's hospital determined that the child had suffered injuries that were non-accidental.

Detective reviewed photographs of the child that showed she sustained bruises to her eye and lip and conducted a custodial interview of Mother. During this interview, she stated that, on the night the child sustained the injuries, she came home from work at 4:30 a.m. to find the child alone in the bathroom with the door shut and ripped-up toilet paper on the floor. Her boyfriend was asleep in another room, and she relayed that this situation made her angry.

Mother told Detective that she opened the door to the bathroom with "a little more force" than just "nice and gentle," and she picked up the child "a little rough." She agreed that the bruise on the child's eye was consistent with the bathroom door knob and that it was possible the child hit her eye on the door when she picked her up. Specifically, Detective asked, "[t]hen she hit her eye on the door knob?" and Mother responded, "It could have, possibly, because I just picked her up. I was so frustrated, I picked her up, and just took her straight [into another bathroom]."

Mother further explained that she decided to give the child a bath after finding her in the bathroom. To get the child into the tub, she stated that she "grabbed her underneath her arms . . . and heaved her" into the tub. The child was not "sturdy enough"

when she let her go, and she stated that the child slipped and fell, bruising her lip on the tub.

Based on the interview and photographs, Detective wrote a probable cause statement outlining the reasons he believed Mother had "committed criminal offenses." In this statement, Detective wrote that DFS received a complaint of child abuse from the child's biological father, who noticed the injuries after the child was in Mother's care. He further stated that she came home at 4:30 a.m. to find the child in the bathroom and picked the child up in "an angry and hurried manner." He then wrote that she "stated she slammed [the child's] head into the doorknob due to anger." He also included that she "stated she threw [the child] into the bathtub causing severe bruising and swelling to [the child's] lip."

The Lincoln County prosecutor charged Mother with felony child abuse under section 568.060.1, RSMo 2000. This section provides that a person commits the crime of child abuse if she "[k]nowingly inflicts cruel and inhuman punishment upon a child." She waived the preliminary hearing and was later acquitted.

Mother then brought a two-count suit against Detective for malicious prosecution and violating 42 U.S.C. § 1983 (2006). She argued that he maliciously misstated facts in his probable cause statement and acted with an evil motive. Detective moved for summary judgment on the basis of qualified immunity. In sustaining the motion, the trial court found there was no dispute as to the material facts and Detective was entitled to qualified immunity. It held that "[t]he statements in the probable cause statement submitted by [Detective] were not so much different that the failure to directly quote

3

[Mother] amounted to malicious disregard of the truth and other evidence submitted with the probable cause statement including photos of the alleged victim" provided probable cause for the arrest and entitled him to qualified immunity. Mother appeals. [1]

## Standard of Review

An appellate court's review of a motion for summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. Summary judgment is appropriate when a moving party shows there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 376. The record is reviewed in the light most favorable to the party against whom judgment was entered. *Id.* The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support the claimed right to judgment. *Id.* at 376-81. A defending party may establish a right to judgment by showing that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements. *Id.* at 381.

## State Malicious Prosecution Claim

To prevail on a malicious prosecution claim, a party must prove six elements: (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor; (4) lack of probable cause

---

[1]The case was transferred here from the court of appeals after an opinion was issued. MO. CONST. art. V, § 10.

for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit. *State ex rel. O'Basuyi v. Vincent*, 434 S.W.3d 517, 519 (Mo. banc 2014). Malicious prosecution actions are not favored in the law as public policy supports uncovering and prosecuting crime. *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 806 (Mo. banc 1984). As such, courts require strict compliance with the requisite elements. *Edwards v. Gerstein*, 237 S.W.3d 580, 583 (Mo. banc 2007).

Mother's claims center around two statements that Detective made in the probable cause affidavit he provided the prosecutor. The first alleged misstatement is that Detective stated that, when he interviewed Mother, she admitted that she "slammed" the child's head into the door knob due to anger. However, the transcript of the interview reveals that she did not use the word "slam." Instead, Mother said that the bruise on the child's eye was consistent with the size of the door knob, that she had been forceful with the child, and that it was possible the child hit her eye on the doorknob when Mother picked her up. The second alleged misstatement by Detective was that Mother admitted that she "threw" the child into the bathtub, when the transcript reflects that she said she "heaved" the child, and the child slipped when she let go.

Mother claims that these alleged misstatements were either intentionally false or made with reckless disregard for their truth. In regard to the second alleged misstatement, Mother says that she said that she "heaved" her child into the tub, not that she threw her child in the tub. The primary definition of "heave" is "to cause to move upward or onward by a lifting effort . . . to lift with exertion." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1046 (1993). But another meaning of "heave" is "to

5

throw, cast, toss, hurl." Mother failed to present any evidence that, considered in context, Detective's statement describing Mother as having admitted to "throwing" the child into the tub was an intentional falsehood or a reckless disregard for the truth.

As to the first alleged misstatement, the description of events by Mother and Detective is substantially the same; the key difference is in Detective's characterization of Mother's intent. In the transcript, Mother says that the child's eye injury "could have, possibly," been from the doorknob "because I just picked her up. I was so frustrated, I picked her up, and just took her straight [into another bathroom]" and admittedly her eye had been injured in a way that could have been caused by the doorknob. Although Detective may have believed from this statement that Mother knocked the child's eye intentionally against the doorknob, it was inaccurate to state that she admitted this intent. But this Court need not address whether such intent was implicit in her statements, despite her acquittal of child abuse, because Mother has not shown that Detective's attribution of motive to Mother was motivated by malice.

When the underlying prosecution is a criminal proceeding, "malice" means that "the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice." *Sanders*, 682 S.W.2d at 814. There was no evidence before the trial court that Detective bore an actual hatred or malice toward Mother. Interrogating suspects and securing arrests and convictions are central features of a detective's job. There was nothing in the record to indicate that Detective acted for any purpose other than to perform his duties of investigating a child abuse claim.

Because Mother cannot show that Detective was motivated by malice, Detective

6

was entitled to judgment on Mother's malicious prosecution claim.

## § 1983 Claim

Mother next argues that Detective was not entitled to qualified immunity from the § 1983 claim and that summary judgment was not appropriate. Section 1983 allows a person who has had "any rights, privileges, or immunities secured by the Constitution" violated by another, under the color of state law, to sue the violator for damages.

Government officials may be entitled to qualified immunity from §1983 claims. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986). Law enforcement officers are not entitled to qualified immunity, however, if their actions violate a clearly established law of which a reasonable person would have known at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A warrant issued upon an affidavit containing deliberate falsehoods or statements made with reckless disregard for the truth violates the Fourth Amendment and could precipitate a § 1983 claim as a warrant may issue only on a finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). Law enforcement officers may still be entitled to qualified immunity if the false statements were not material to determining probable cause. *See id*. at 171-72 ("if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause" the party challenging the warrant is not entitled to relief).

To analyze whether the false statements were material to finding probable cause,

7

courts reconstruct the supporting affidavit without the false statements and determine if a corrected affidavit would still support probable cause for an arrest. *See, e.g.*, *Small v. McCrystal*, 708 F.3d 997, 1007-08 (8th Cir. 2013); *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996). It is enough for the officer to show there was "merely *arguable* probable cause," which is a mistaken, but objectively reasonable belief, that the suspect committed a criminal offense. *Dowell v. Lincoln Cnty., Mo.*, 762 F.3d 770, 777 (8th Cir. 2014).

Here, even if Detective's statements had been false or made with a reckless disregard for their truth, a corrected affidavit would have established that: (1) DFS received a complaint of child abuse; (2) the report was filed by the child's biological father, who noticed the injuries after the child was in Mother's care; (3) Mother stated that she came home from work at 4:30 a.m. to find the child in the bathroom; (4) Mother admitted that she was angry and picked child up in a hurried manner; (5) Mother stated that she had picked the child up "a little rough" and that the bruise on child's eye was consistent with the door knob; and (6) Mother stated she was still angry when she "heaved" the child into the bathtub, causing the child to slip and fall and sustain severe bruising and swelling to her lip. The photographs also provided support that the child had been abused.

Although a corrected statement may not have provided probable cause that Mother "knowingly" inflicted the injuries on the child as required by section 568.060.1, the corrected affidavit would have provided an objective basis to believe that Mother committed *some* criminal offense because Mother admitted she was angry and heaved the

8

child into the bath tub.  *Compare* section 568.060.1, RSMo 2000 (a person commits the crime of child abuse if she "[k]nowingly inflicts cruel and inhuman punishment upon a child"), *with* section 568.050.1(1), RSMo Supp. 2006 (a person commits second-degree child endangerment if "[h]e or she with criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child").

Under the facts here, as there was no Fourth Amendment violation, Detective was entitled to qualified immunity on Mother's §1983 claim.  *See Keil v. Triveline*, 661 F.3d 981, 985-86 (8th Cir. 2011) (officer entitled to qualified immunity if there was probable cause to arrest a suspect for violating *any* applicable statute, even if not the one contemplated at the moment of the arrest).

## Conclusion

The trial court's judgment is affirmed.

_____
Mary R. Russell, Judge

All concur.

9