

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| MARY BETH TATICEK, | ) | No. ED103852 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | |
| | ) | Honorable Richard K. Zerr |
| HOMEFIELD GARDENS CONDOMINIUM | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | |
| Respondents. | ) | Filed: June 21, 2016 |

### Introduction

Mary Beth Taticek (Appellant) appeals the judgment of the Circuit Court of St. Charles County granting Homefield Gardens Condominium Association and Roy H. Smith Real Estate Company's (collectively, Respondents) motion for summary judgment. In two points on appeal, Appellant argues that the trial court erred by granting Respondents' motion for summary judgment because 1) Respondents owed Appellant a duty under three different theories of negligence liability, and 2) the question of whether Respondents breached their duty to Appellant was a question of fact reserved for a jury. We reverse and remand.

### Factual Background

Appellant was a resident at Homefield Gardens Condominiums in O'Fallon, Missouri. The condominium complex had a non-profit corporation, Homefield Gardens Condominium

Association,[1] which was responsible for the operation of the complex. The condominium association hired Roy H. Smith Real Estate Company (hereinafter Smith Management Group) to manage the complex. The association, pursuant to its Declaration, established rules and regulations for the condominium complex.[2]

In 2013, a pit bull attacked Appellant in the common area of her condominium complex. Another resident at the complex owned the dog. Appellant suffered multiple injuries from the attack, some that resulted in nerve damage. Appellant filed suit against Respondents Homefield Gardens and Smith Management Company.[3] In her petition, Counts IV, V, VI and VII alleged that Respondents were liable for her injuries under theories of premises liability and negligence.[4] Plaintiff alleged that Respondents were negligent because the condominium association failed to enact and/or enforce rules relating to dogs, failed to enforce the regulations that were in place, and failed "to perform regular inspections of all buildings to ensure compliance" with the rules and regulations.

Respondents filed a motion for summary judgment, stating that as a matter of law, they did not owe a duty to Appellant under any of Appellant's theories of liability. Appellant filed her Responses in Opposition to the motion for summary judgment, and both parties filed Proposed Findings and Orders. After a hearing, the trial court granted Respondents' motion for summary judgment. This appeal follows.

---

[1] Throughout this opinion, Homefield Gardens Condominium Association will be referred to as "Respondent Homefield Gardens, "the condominium association," or simply, "the association."
[2] Relevant rules and regulations will be referred to in the body of this opinion.
[3] Appellant also filed suit against the owner of the pit bull, but those counts were dismissed and are not the subject of this appeal.
[4] Additionally, Appellant's claims regarding premises liability are not at issue in this appeal.

**Standard of Review and Relevant Law**

An appellate court's review of a motion for summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. "Summary judgment is appropriate when a moving party shows there are no genuine issues of material fact and the party is entitled to judgment as a matter of law." *Copeland v. Wicks*, 468 S.W.3d 886, 889 (Mo. banc 2015). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* "The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support the claimed right to judgment." *Id.*

In order to prevail on a claim of negligence, the plaintiff must prove: 1) existence of a duty on the part of the defendant to protect the plaintiff from injury; 2) failure of the defendant to perform that duty; and 3) injury to the plaintiff resulting from the defendant's failure. *Blackwell v. CSF Properties 2 LLC*, 443 S.W.3d 711, 716 (Mo. App. E.D. 2014). "Duty" is unique among the elements of negligence "because the existence of duty is a question of law" to be decided by the court. *Miles ex rel. Miles v. Rich*, 347 S.W.3d 477, 483 (Mo. App. E.D. 2011). "The breach of a duty is a question of fact, which is ordinarily an issue for the jury to decide." *Crane v. Drake*, 961 S.W.2d 897, 901 (Mo. App. W.D. 1998). The common law negligence standard requires a defendant to exercise "the degree of care of a reasonable person of ordinary prudence under similar circumstances, now commonly referred to as the 'ordinary degree of care.'" *Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 294 (Mo. banc 2014). "[O]rdinary care is a relative term; it is a care commensurate with the particular conditions and circumstances involved in the given case." *Id.* (internal citations and quotations omitted).

## Point I: Respondents' Duties Owed to Appellant

In her first point on appeal, Appellant argues that the trial court erred by granting summary judgment because Respondents did, in fact, owe Appellant a duty of care as a matter of law. Appellant argues three theories of liability, specifically that: 1) Respondents' Declaration imposed upon Respondents a duty to create and enforce rules for the safety of residents; 2) Respondents' rules and regulations imposed upon Respondents a duty to enforce rules for the safety of residents; and 3) Respondents undertook a duty to enforce the rules. Respondents counter that they did not owe Appellant a duty because they did not have a duty to create the "right" rules for the safety of condominium residents; they were not aware of the existence of the dog; and they were not aware that the dog had "vicious propensities."

The duties owed by condominium associations to the individual condominium owners are limited to those duties included in the association's declaration and bylaws, as well as duties imposed by statute. *Wescott v. Burtonwood Manor Condo. Ass'n Bd. of Managers*, 743 S.W.2d 555, 558 (Mo. App. E.D. 1987). A condominium association's declaration gives the association the power to enact the association's particular rules and regulations. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 6.7 (2000). In turn, the association's rules and regulations, which govern the internal administration of the condominium complex, must be strictly construed. *Id.*; 15A AM. JUR. 2D CONDOMINIUMS AND CO-OPERATIVE APARTMENTS § 16 (1976). The rule of strict construction means that we cannot give the declaration or bylaws a "broader application than is warranted by its plain and unambiguous terms[,]" and we cannot presume anything "that is not expressed" by the declaration. *Shaw v. Mega Industries, Corp.*, 406 S.W.3d 466, 472 (Mo. App. W.D. 2013). With this in mind, we will address each of Appellant's arguments regarding duty in turn.

4

### Did Respondents have a duty to create reasonable rules?

The trial court concluded that Respondents did not have a duty to create reasonable rules. Appellant argues that the trial court erred by granting summary judgment because, pursuant to the Declaration, Respondents had a duty to create reasonable rules for her "health, comfort, safety and welfare." Article 10 of Respondent Homefield Gardens' Declaration provides, in relevant part:

> 10.3 Powers and Duties: The powers and duties of this Association shall include those set forth in the Articles and By-Laws, the Act and this Declaration, and shall include (but not necessarily be limited to) the following:
>
> . . .
>
> (h) The power to adopt and amend by-laws and reasonable rules and regulations for the maintenance and conservation of the Condominium Property, and for the health, comfort, safety and welfare of the Unit Owners, all of whom shall be subject to such rules and regulations.

The rules and regulations, in turn, provide guidelines for pet ownership. Specifically, the bylaws provide that residents may have only "one dog . . . and not over 25 pounds." The document also states that unit owners "must have a pet permit filed with the Management Company." Other pet regulations require that pets be on a leash in common areas, owners must immediately pick up pet waste, and pets should not be left unattended. Additionally, the rules state that owners "should not allow their pets to cause or create a nuisance or unreasonable disturbance of noise to any other owner."

In support of her argument, Appellant differentiates the present case from *Randol v. Atkinson*, 965 S.W.2d 338 (Mo. App. E.D. 1998). In that case, a condominium owner used a charcoal grill on her deck. *Id.* at 340. The grill started a fire that destroyed the condominium building. *Id.* Other owners whose condominiums were destroyed by the fire sued the condominium association for negligence. *Id.* One of the plaintiffs' theories was that the

5

condominium association "owed a duty of care to the condominium owners under the Declaration of Condominium and bylaws for the Woodmoor Condominiums[.]" *Id.* at 341. The bylaws at issue in the case stated that the condominium association had the power "to adopt, repeal, or amend Rules and Regulations for the Woodmoor Condominiums." *Id.* This Court held that such a provision did not, by itself, impose a duty on the condominium association "to ban the use of charcoal grills." *Id.* In the present case, Appellant asserts that the present case differs from *Randol* because, here, the Declaration is not generic, but "states clearly" that Respondent Homefield Gardens has a duty to create reasonable rules for residents' "health, comfort, safety, and welfare."

Appellant's proposed reading of the Declaration runs contrary to the strict construction of the condominium association's Declarations and bylaws. *Wescott*, 743 S.W.2d at 558. Appellant's position would require us to give an expansive meaning to the Declaration—that Respondents are required to create rules and regulations related to safety issues that condominium residents might encounter. However, the Declaration, by its terms, provides that the condominium association has "[t]he *power* to adopt and amend by-laws and reasonable rules and regulations." (Emphasis added). Strictly construing the Declaration, we must conclude that nothing in the Declaration imposes a duty on Respondents to create rules regarding the residents' safety. The Declaration does not create a duty of the condominium association to create any particular type of rule—it merely gives the condominium association the *power* to create rules and regulations. Therefore, the association did not have, as Appellant suggests, a duty to create any specific rules or regulations. *Shaw v. Mega Industries, Corp.*, 406 S.W.3d at 472 (courts cannot presume anything "that is not expressed" by the declaration).

6

***Did Respondents have a duty to enforce the rules and regulations?***

Regarding whether Respondents had a duty to enforce the rules and regulations in place, the trial court concluded:

> There is no duty for [Respondents] to continually spy on residents to determine whether they are in possession of a dog. Nor is there a duty to anticipate that residents will violate the restrictions in place.

Appellant argues that, contrary to the trial court's judgment, the rules and regulations imposed a duty on Respondents to enforce the rules that were in place, because the rules provide that there will be "regular inspection of all buildings, vehicles, etc. to ensure and enforce compliance." Appellant contends that "these statements alone" create a duty for Respondents to reasonably enforce the rules regarding pet registration and weight limits through regular inspections of buildings and common areas. Further, Appellant argues that the trial court conflated the issues of duty and breach in coming to its conclusion. We agree.

As noted, the duties owed by condominium associations to the individual condominium owners are limited to those duties included in the association's declaration and bylaws. *Wescott*, 743 S.W.2d at 558. Here, Respondent Homefield Gardens' Declaration gave the association the power to create reasonable rules for the residents' "health, comfort, safety, and welfare." Pursuant to that power, Respondent Homefield Gardens enacted rules and regulations, which provided that there would be "regular inspections of all buildings, vehicles, etc. to ensure and enforce compliance." Through this document, the condominium association established a duty to enforce compliance with the rules and regulations that it promulgated.

Respondents argue that the 25-pound rule was not created for residents' safety and they did not know about the dog. Our review of the record shows that the association's representative responded affirmatively when asked whether "the rules are made to keep people safe."

7

Nonetheless, Respondents contend that even if the rule was "created for the purposes of safety, it would still be necessary for Respondents to know that there was a violation of the [r]ule and that it was necessary for them to remove a dog from the premises." However, Respondents' arguments do not relate to whether they had to a duty to enforce their rules; instead, Respondents' contentions go to whether Respondents acted with ordinary care in exercising their duty to enforce the rules and regulations. Certainly, the purpose of the rule, the violation of the rule, and Respondents' knowledge of the dog are examples of the "particular conditions and circumstances involved" in the case. *Chavez*, 450 S.W.3d at 294. The particular conditions and circumstances are all facts to be considered in determining whether Respondents acted reasonably, *i.e.*, whether they breached their duty to enforce their rules and regulations. *Id.* As noted, whether Respondents breached their duty is a question of fact for the jury's determination. *Crane*, 961 S.W.3d at 901.[5] Accordingly, because Respondents had a duty to enforce the rules and regulations, the trial court erred by concluding that Respondents were entitled to judgment as a matter of law.

### *Did Respondents undertake to enforce the rules and regulations?*

We next consider Appellant's argument that Respondents undertook a duty to enforce the rules. *See* RESTATEMENT (SECOND) OF TORTS § 323 (1965). Appellant argues that Respondents undertook a duty because they created rules specifically related to dogs, they hired Respondent

---

[5] Our conclusion in this regard should not be read to allow condominium associations "to continually spy on residents," as was the trial court's concern. The rule itself simply requires "regular" inspections. Furthermore, each condominium owner has the right to the exclusive possession of his or her unit, and a condominium association certainly may not enforce its rules by constant inspection of buildings and individual units. *See* § 448.1-105(1) RSMo (2000) (providing that each condominium unit is "a separate parcel of real estate."); *see also* 15B AM. JUR. 2D CONDOMINIUMS AND COOPERATIVE AGMTS. § 1 (condominium owners are entitled "to both the exclusive ownership and possession of a unit."). We simply hold that by providing that it would regularly inspect buildings to enforce and ensure compliance with the rules, the association had a duty to enforce its rules and regulations, and whether the association reasonably did so is a question of fact for the jury. In fact, during oral argument, Appellant's counsel agreed that any inspection to enforce the rules would be limited to common areas and the exterior.

Smith Management Group to enforce the rules, and those rules provided that there would be regular inspections to ensure compliance. Respondents counter that they did not undertake to render services that they should recognize as necessary for the protection of another.

Section 323 of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>     (a) his failure to exercise such care increases the risk of such harm, or
>     (b) the harm is suffered because of the other's reliance upon the undertaking.

The Missouri Supreme Court has adopted § 323 of the Restatement. *See Green v. Unity School of Christianity*, 991 S.W.2d 201, 205 (Mo. App. W.D. 1999). To be successful in a claim pursuant to § 323, a plaintiff must "prove that [the defendant] undertook 'to render services' to [the plaintiff] and that [the defendant] should recognize these services as 'necessary for the protection of' [the plaintiff]." *Id.* Because the Restatement does not define "undertaking," we look to the dictionary definition, which defines "undertake" as "to take upon oneself; to set about." *Id.* at 206 (citing WEBSTER'S NEW WORLD DICTIONARY, SECOND COLLEGE EDITION, 1548 (1970)).

In *Green*, the defendant owned a private lake which was available for fishing to the defendant's employees. 991 S.W.2d at 202. The plaintiffs were the family members of an employee and his friend who died while fishing on the lake. *Id.* The plaintiffs argued that the defendant owed a duty to the decedents, under § 323, "by virtue of [the defendant's] representations in its brochure." *Id.* at 205. The brochure at issue provided that the defendant provided "24-hour building and grounds security." *Id.* The plaintiffs argued that this statement in the brochure amounted to the defendant undertaking "an obligation to render services that [the

9

defendant] should have known were necessary to protect its members and their guests while on the lake." *Id.* The Western District concluded that there was no such undertaking. *Id.* at 206. In so concluding, the Court stated:

> Appellants do not identify what act of Respondent was alleged to have been such an undertaking, although they argue that "Respondent represented that it would enforce the lake rule for all users and provide security and emergency response capability 24 hours a day[.]" It is apparent that Appellants argue that the "undertaking" was the publishing of the brochure. However, the record does not reveal when, where or to whom that text was published. There is no evidence that the decedents even knew about this brochure. We conclude that the publishing of that brochure, under the facts of this case, is not an undertaking under § 323.

*Id.* at 206.

Having reviewed *Green*,[6] we conclude that the present case is factually distinguishable. Here, the condominium association had the power to create rules and regulations for the residents' "health, comfort, safety, and welfare." Respondent Homefield Gardens exercised this power by creating rules and regulations, which were distributed to the condominium residents. Therein, the association ensured residents enforcement of the rules through "regular inspections of all buildings, vehicles, etc." For this purpose, Respondent Homefield Gardens hired Respondent Smith Management Group. As such, Respondents took upon themselves to enforce the rules and regulations of the condominium association. As noted by Appellant, Respondent Homefield Gardens' representative, in her deposition, stated the rules and regulations were made, at least in part, for the safety of the condominium residents. Accordingly, we conclude that Respondents did, in fact, undertake "to render services to another which he should recognize as necessary for the protection of the other's person or things[.]"

---

[6] For other cases discussing Missouri's adoption of RESTATEMENT (SECOND) OF TORTS § 323, *see Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 132 (Mo. App. E.D. 1993); *Trader v. Blanz*, 937 S.W.2d 325, 329 (Mo. App. W.D. 1996); *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 432-33 (Mo. banc 1985).

Therefore, the next issue is whether Respondents "exercise[d] reasonable care to perform" the services, namely, the enforcement of the rules and regulations. Again, whether Respondents exercised reasonable care is a question of fact to be determined by the jury. *Crane*, 961 S.W.3d at 901. Accordingly, because Respondents undertook to render services to Appellant, the trial court erred by concluding that Respondents were entitled to judgment as a matter of law.

In sum, we conclude that Respondents had a duty to enforce the rules and regulations that it created and they undertook to enforce said rules and regulations. Therefore, Point I is granted, as the trial court erred by concluding that Respondents did not have a duty to Appellant.

### Point II: Did Respondents exercise reasonable care?

Having established that Respondents did, in fact, have a duty to enforce the rules, and that Respondents undertook to render services to Appellant, we now turn to Appellant's second point on appeal. Appellant argues that the trial court erred by concluding that Respondents did not breach their duty to Appellant by failing enforce the condominium association's rules. Appellant contends that Respondents breached their duty because they did not act reasonably because they did "next to nothing to ensure the rules were enforced." Respondent counters that there is no evidence that Respondents had knowledge of the dog, and, therefore, any duty to enforce the rules was not triggered.

As noted, "ordinary care is a relative term[,]" and whether a party exercised the "degree of care of a reasonable person of ordinary prudence under ordinary circumstances" depends upon the facts of the case. *Chavez*, 450 S.W.3d at 294. Under the circumstances of the present case, the trial court erred by granting summary judgment because whether Respondents acted reasonably was a question of fact for the jury. *Crane*, 961 S.W.2d at 901. Whether Respondents

11

acted reasonably in enforcing the rules and regulations of the condominium association is a genuine issue of material fact. *Copeland*, 468 S.W.3d at 889. Both parties presented evidence supporting their conflicting arguments regarding Respondents' reasonableness in their enforcement of the rules. This factual determination was not an issue for summary judgment, but rather is a question of fact for the jury. Accordingly, summary judgment as inappropriate in this case and Appellant's Point II is granted.[7]

## Conclusion

Although Respondents did not have a duty to create reasonable rules and regulations, we conclude that once Respondents exercised the power to create rules and regulations, they had a duty to enforce said rules by the language of the rules as written. Additionally, Respondents undertook to render services to Appellant. Accordingly, while we affirm the trial court's grant of summary judgment on the issue of whether Respondents had a duty to create "the right rules," we reverse the trial court's judgment on the issue of whether Respondents had a duty to enforce the rules and regulations as enacted. Further, we hold that the trial court erred by concluding that Respondents acted reasonably in their enforcement of the association's rules and regulations; such a determination was a question of fact for the jury.

The judgment of the trial court is reversed and we remand for further proceedings consistent with this opinion.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.

---

[7] While we conclude that summary judgment was inappropriate, we express no opinion on the merits of Appellant's case.

12