

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Respondent, | ) | WD83178 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | September 29, 2020 |
| MARIA OLIVARES, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Kevin D. Harrell, Judge**

**Before Division Two:** Karen King Mitchell, Presiding Judge, and
Anthony Rex Gabbert and W. Douglas Thomson, Judges

Maria Olivares appeals the award of summary judgment to Scottsdale Insurance Company in its declaratory judgment action to determine insurance coverage for the death of Olivares's son (Son). Olivares raises two points on appeal. She claims that the motion court erred in granting summary judgment because Scottsdale failed to establish that its assault and/or battery coverage form applied as a matter of law to limit coverage to $25,000.00 in that (1) the terms "assault," "battery," and "assault and/or battery" as used in the policy were ambiguous and thus should be interpreted in favor of coverage; and (2) the uncontroverted facts failed to establish that Son's

death arose out of an "assault," "battery," or "assault and/or battery" as those terms were defined by the court. Finding no error, we affirm.

## Background

On the evening of October 24, 2013, Son was at a bar owned by Aztec Marketing, Inc. While at the bar, Son was involved in a fight with another patron (Patron); others present broke up the fight, and a bar employee ordered Patron to leave. As he was leaving, Patron was overheard saying, "I'll be back. You'll regret it." Patron went to his car and retrieved a gun; he then returned to the bar, where he fired a shot in the air. A bar employee called the police, but Patron shot Son before the police arrived. Son later died.

In January 2017, Olivares filed a wrongful death action against Aztec and one of its employees, asserting claims for negligent security and dram shop liability. At the time of the shooting, Aztec was insured by Scottsdale; the policy included commercial general liability and liquor liability coverage. With respect to bodily injury coverage, the pertinent part of the commercial general liability coverage form stated, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." In relevant part, the liquor liability coverage form stated,

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

The policy defined "injury" as "damages because of 'bodily injury' . . . including damages for care, loss of services or loss of support." The policy's coverage limits for commercial general liability and liquor liability were $1,000,000.00.

2

The policy contained an Assault and/or Battery Limited Liability Coverage Form, which limited coverage for assault and battery, although those terms were not defined in the policy. In pertinent parts, the assault/battery coverage form stated,

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
. . .

LIQUOR LIABILITY COVERAGE PART

. . .

Except as provided by this coverage form, this policy does not apply to "injury," "bodily injury," . . . arising from:

1. Assault and/or Battery committed by:
   a. Any insured;
   b. Any employee/"employee" of any insured; or
   c. Any other person; or

2. The failure to suppress or prevent Assault and/or Battery by any person in 1. above; or

3. The selling, serving or furnishing of alcoholic beverages which results in Assault and/or Battery; or

4. The negligent:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorities, or failure to so report; or
   e. Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 1. and 2. above.

We will have no duty to defend any suit/"suit" against you seeking damages/"damages" on account of any such injury unless coverage is provided by this Coverage Form.

The coverage provided is described below:

INSURING AGREEMENTS

For the premium shown below, we agree to afford coverage with respect to Assault and/or Battery Liability only as indicated on this Coverage Form and subject to the liability limits and provisions as set forth in this Coverage Form.

| LIMITS OF LIABILITY | COVERAGE |
|---|---|
| $   25,000   Each Event | Assault and/or |
| $   50,000   Aggregate | Battery Liability |
| $  INCLUDED   TOTAL PREMIUM | |

## 1. COVERAGE – ASSAULT AND/OR BATTERY LIABILITY

We will pay on your behalf all sums which you shall become legally obligated to pay as "damages" because of "injury," "bodily injury," . . . to any person arising out of Assault and/or Battery that takes place during the policy period.

We will have the right and duty to defend any suit against you seeking such "damages," even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and such settlement of any claim or suit as we deem expedient, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in this Coverage Form has been exhausted. However, we will have no duty to defend the insured against any suit seeking "damages" to which this insurance does not apply.

. . .

## 4. LIMITS OF LIABILITY

Regardless of the number of insureds under this policy, our liability is limited as follows:

The limit of liability stated in this coverage form as applicable to each Event is the most we will pay for all "damages" arising out of "injury," "bodily injury," . . . because of assault and/or battery, regardless of the number of insureds, persons injured, claims made or suits brought or persons or organizations making claims or bringing suits. The limit of liability stated above as Aggregate, subject to the above provision regarding each Event, is the total limit of our liability under this coverage for all "damages" in any policy period.

## 5. DEFINITIONS

"Damages" means a monetary judgment, award, or settlement, including damages for death, which are payable because of injury to which this insurance applies. However, damages do not include criminal restitution.

4

"Event" means an act or series of acts based on or arising out of the same assault and/or battery.

In February 2018, Olivares, Aztec, and Scottsdale entered into a settlement agreement, which fully released Aztec and its employee from the underlying action while reserving the issue of coverage limits to be litigated between Olivares and Scottsdale. Pursuant to the agreement, a $1,000,000.00 judgment was entered against Aztec with the understanding that the judgment would be satisfied from the policy only. Scottsdale paid Olivares $25,000.00 pursuant to the assault/battery coverage form, but Olivares contends that the shooting is covered by the full $1,000,000.00 limit of the policy, and not the $25,000.00 limit of the assault/battery coverage form.

Scottsdale filed this declaratory judgment action seeking a determination that the assault/battery coverage form applies and limits coverage for Son's shooting death to $25,000.00. Thereafter, Scottsdale moved for summary judgment setting out twenty-two uncontroverted facts. In response, Olivares admitted the facts set forth in Scottsdale's motion; she did not allege any additional facts. Scottsdale then filed a reply that did not assert any additional facts; no sur-reply was filed.

At oral argument, Scottsdale asserted that, pursuant to the undisputed facts set forth in its motion, the assault/battery coverage form unambiguously limited coverage for Son's death to $25,000.00. Olivares argued that the terms "assault" and "battery" are ambiguous, and therefore, must be interpreted in favor of coverage. She further argued that, even if the terms are not ambiguous, Scottsdale's uncontroverted facts failed to establish, as a matter of law, that the assault/battery coverage form applied.[1]

---

[1] Following oral argument on the summary judgment motion, Scottsdale filed a motion for leave to cite additional authority and to clarify and supplement the summary judgment record. Scottsdale attached five new exhibits to this motion that were not certified. The court never ruled on that motion.

5

On May 20, 2019, the court granted Scottsdale's motion for summary judgment.[2] The court found "that the terms 'assault', 'battery', and 'assault and/or battery' have commonly understood definitions and are not ambiguous." The court stated,

> Webster's Third New World College Dictionary defines assault as, "an unlawful threat or unsuccessful attempt to do physical harm to another, causing a present fear of immediate harm."[] Battery is defined as, "any illegal beating or touching of another person, either directly or with an object."[] The definition provided for assault and battery is, "the carrying out of threatened physical harm or violence."[]
>
> This Court must apply the plain meaning to "assault", "battery", and "assault and/or battery", even if it restricts coverage. The most reasonable and commonly understood definitions of those terms provided above, as applied to the undisputed facts of the underlying case show that the Assault and Battery Form apply. The shooter threatened the patrons of the bar ("assault"), left to retrieve his gun from the car, and eventually shot the deceased ("battery" and "assault and battery"). While [Olivares] argues that battery is most commonly thought of as a beating, the dictionary definition clearly provides for touching with an object, as we have here with a bullet. This Court finds that all three terms in question, "assault", "battery", or "assault and/or battery" apply here and that coverage falls under the Assault and Battery Form.

Olivares timely filed a motion for new trial to which she attached the pages of Webster's New World College Dictionary 3rd Edition cited by the court, noting that the court's definition of "battery" was the sixth of multiple definitions, and using the first definition, instead of the sixth, would result in coverage under the policy for the full $1,000,000.00. Olivares further argued that, even if the court had properly defined the terms assault, battery, and assault and battery, Scottsdale's uncontroverted facts failed to establish the right to judgment as a matter of law. The court did not rule on Olivares's motion for new trial; thus, it was deemed overruled.[3]

This appeal follows.

---

[2] That same day, Scottsdale filed a supplemental exhibit to its motion for leave; the new exhibit, unlike the exhibits attached to its motion to supplement, was certified.

[3] Missouri Supreme Court Rule 78.06 (2019) provides, "Any motion for new trial . . . is overruled for all purposes if the trial court does not rule on it within ninety days after the date the last such timely motion is filed."

**Standard of Review**

"An appellate court's review of a motion for summary judgment is *de novo*." *Copeland v. Wicks*, 468 S.W.3d 886, 889 (Mo. banc 2015). "Summary judgment is appropriate when a moving party shows there are no genuine issues of material fact and the party is entitled to judgment as a matter of law." *Id*. "The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support the claimed right to judgment." *Id*.

"The interpretation of an insurance policy is a question of law, which we review *de novo*." *Am. Family Mut. Ins. Co. v. Sharon*, 596 S.W.3d 135, 142 (Mo. App. W.D. 2020). "[I]n *de novo* review, we will affirm on any basis supported by the record." *Id.* (quoting *TracFone Wireless, Inc. v. City of Springfield*, 557 S.W.3d 439, 444 (Mo. App. S.D. 2018)).

**Analysis**

Olivares raises two points on appeal. She claims that the motion court erred in granting summary judgment because Scottsdale failed to establish that its assault/battery coverage form applied as a matter of law in that (1) the terms "assault," "battery," and "assault and/or battery," which are not defined in the policy, were ambiguous and thus should be interpreted in favor of coverage; and (2) the uncontroverted facts failed to establish that Son's death arose out of an "assault," "battery," or "assault and/or battery" as those terms were defined by the court.

"Insurance policies are contracts and a court must start with the language contained within the policy in determining its meaning." *Ferguson v. St. Paul Fire and Marine Ins. Co.*, 597 S.W.3d 249, 255 (Mo. App. W.D. 2019). "The words of a policy must be given their plain and ordinary meaning consistent with the reasonable expectation and objectives of the parties, unless it is obvious that a technical meaning was intended." *Id.* at 255-56 (quoting *Drury Co. v. Mo. United*

7

*Sch. Ins. Counsel*, 455 S.W.3d 30, 36 (Mo. App. E.D. 2014)). "[W]hen terms are undefined we give terms their ordinary meaning, which is the meaning that the average layperson would reasonably understand, and 'to determine the ordinary meaning of a term, this Court consults standard English language dictionaries.'"[4] *Id.* at 256 (quoting *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999)); *see also Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 40 (Mo. App. E.D. 2007) (quoting *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App. E.D. 1993) ("In interpreting whether the language used in the policy is ambiguous, the words will be tested in light of the meaning which would normally be understood by the average layperson, [and] the layperson's definition will be applied unless it plainly appears that the technical meaning is intended."). "If the language of an insurance policy is unequivocal, [we give it] its plain meaning, even if it restricts coverage." *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 342 (Mo. App. E.D. 2000). And "the insurer has the burden to demonstrate that an exclusion to coverage applies." *Am. Family Mut. Ins. Co.*, 596 S.W.3d at 143.

In her first point, Olivares claims the assault/battery coverage form is ambiguous because the dictionary referenced by the motion court—Webster's Third New World College Dictionary—contains several different definitions of "battery." The court selected a definition that would encompass a shooting but, Olivares argues, other definitions, including some listed before the one selected by the court, would not include a shooting. However, a term in an insurance policy is not ambiguous simply because the term has more than one definition. *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 346 (Mo. banc 2015) (holding the terms "invest" and "investment" were not

---

[4] As noted previously, the terms "assault," "battery," and "assault and/or battery" are not defined in the policy, but "[t]he failure of a policy to define a term does not, in and of itself, render it ambiguous." *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 40 (Mo. App. E.D. 2007). In fact, Missouri courts "have routinely upheld 'assault or battery' exclusions in cases involving actions to prevent or control the behavior or conduct of bar patrons." *Id.* at 43.

8

ambiguous despite having multiple definitions).  Likewise, a term is not ambiguous just because the parties disagree about its meaning.  *Trainwreck*, 235 S.W.3d at 40.  The terms of an insurance policy are ambiguous if they are duplicitous or difficult to understand.  *Id.*; *see also, Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 512 (Mo. banc 2017) (quoting *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991) ("Ambiguity exists when there is 'duplicity, indistinctness, or uncertainty' in the contract language.")).  There is nothing duplicitous or difficult to understand about the term battery in Scottsdale's assault/battery coverage form.

The question here is not which of several dictionary definitions should prevail, but rather whether the average layperson would reasonably understand the term battery to include a shooting.[5]  After consulting the dictionary definitions, the motion court concluded that the average layperson would consider Son's injury to be the result of a battery.  We agree.

As in the present case, in *Green v. Penn-America Insurance Company*, 242 S.W.3d 374 (Mo. App. W.D. 2007), *abrogated on other grounds by A.D.D. v. PLE Enters., Inc.*, 412 S.W.3d 270 (Mo. App. W.D. 2013), the mother of a nightclub patron who was shot outside of the club brought a wrongful death action against the club owner.  The nightclub was insured by a policy that excluded coverage for "assault and battery."  *Id.* at 377.  The term "assault and battery" was not defined in the policy.  *Id.* at 382 n.10.  Citing Webster's Third New International Dictionary 187 (1993), which defined battery as a "willful, angry and violent, or negligent unlawful touching of another's person or clothes[,]" the court concluded that the term "assault and battery" was unambiguous.  *Id.* at 384.  Although the mother in *Green* did not argue that a shooting was not an

---

[5] In her opening brief, Olivares incorrectly frames the question as "whether the terms assault, battery and assault and/or battery, undefined by Scottsdale's policy, are reasonabl[y] susceptible to a definition that does not include a shooting."  Rather, the question is whether the average layperson would reasonably understand the term battery to include a shooting.

9

assault and/or battery, instead arguing that her underlying claim was for nuisance and not assault or battery, this court held that "[a] reasonable person reviewing the exclusion clause would understand it to cover this sort of injury[,]" meaning a gunshot wound. *Id.* at 382 n.10, 384.

Likewise, in *McAlister v. Scottsdale Ins. Co.*, No. 1:09CV118 SNLJ, 2010 WL 3842407 (E.D. Mo. Sept. 27, 2010), the federal district court, applying Missouri law, found an assault and battery provision similar to the one at issue in the present case to be unambiguous and to apply to a stabbing that occurred outside the insured's tavern. *Id.* at *1-2. Read together, *Green* and *McAlister* concluded that an average layperson would reasonably understand the term "battery" to include unlawful touching, whether it be with one's fists, a bullet, or a knife. These cases do not limit the plain and ordinary meaning of "battery" to a single definition, as Olivares would urge us to do. And the fact that the term encompasses different types of touching does not make it ambiguous.

The decisions in both *Green* and *McAlister* are consistent with decisions in several other jurisdictions where courts found the undefined term "battery" used in insurance coverage/exclusion forms to include shootings. *See, e.g., Acceptance Ins. Co. v. Walkingstick*, 887 F. Supp. 958, 959, 962 (S.D. Tex. 1995) (finding an assault and battery exclusion barred coverage for negligence claims against a bar arising from the shooting death of a patron); *Carter v. Adams*, 877 N.E.2d 1015, 1018 (Ohio Ct. App. 1st Dist. 2007) (stating that, to rule a shooting was neither an assault nor a battery, "would be to indulge in pure pettifoggery"); *Colony Ins. Co. v. Jack A. Halprin, Inc.*, No. 3:10-CV-1059 CSH, 2012 WL 2859085, at *15 (D. Conn. July 11, 2012) (finding an assault and battery exclusion applied to claims of negligence arising from the deaths of patrons who were shot and killed in the insured restaurant's parking lot); *Evanston Ins. Co. v. S & Q Prop. Inv., LLC*, No. 8:11-CV-2121-T-27MAP, 2012 WL 4855537, at *2 (M.D. Fla.

10

Oct. 11, 2012) (holding that a fatal shooting "plainly constituted a battery"); *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 524-25 (Kan. 1998) (holding that an assault and battery exclusion barred recovery by gunshot victims because, despite multiple possible definitions of assault and battery, the terms were not ambiguous where all of the definitions conveyed the same general meaning).

Olivares relies on *Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15 (Mo. App. E.D. 2019), in which the Eastern District of this court stated, "we are unwilling to conclude as a matter of law every gunshot wound must have resulted from an assault and battery." *Id.* at 29. *Adams* does not stand for the proposition, asserted by Olivares, that the infliction of a gunshot wound cannot be an assault and/or battery. Rather, the *Adams* court held that the uncontroverted facts in that case did not support summary judgment because the court could not conclude that an assault and/or battery had occurred. *Id.* In *Adams* the record reflected that the child victim was killed by a stray bullet recklessly fired by an unknown person into a crowd; there was no evidence that the deceased was the intended victim, or that he was involved in the fight that led to the shooting. *Id.* at 22, 29. Based on those facts, the court concluded that the record left "open the possibility [the deceased] was the intended or unintended victim of an assault and/or battery, [but] it does not prove it" and therefore the court was "unwilling to conclude as a matter of law every gunshot wound must have resulted from an assault and battery." *Id.* at 29. While *Adams* stands for the proposition that not all gunshot wounds arise from an assault and/or battery, it does not support the conclusions that the terms assault and/or battery are ambiguous or that they do not cover an injury inflicted by gunshot. Whether the uncontroverted facts in this case support a finding that an assault and/or battery occurred is addressed in Olivares's second point, but we note here that the undisputed facts in this case differ from *Adams*, in that the record shows that

11

Patron and Son fought, Patron made oral threats as he was removed from the bar, he retrieved a gun from his car, and he shot Son.

Because the plain and ordinary meaning of battery includes injuries such as those suffered by Son, the trial court did not err in finding the assault and/or battery exclusion applicable.

Point I is denied.

For her second point, Olivares argues that the motion court erred in granting summary judgment because Scottsdale failed to establish that its assault/battery coverage form applied as a matter of law in that the uncontroverted facts failed to establish that Son's death arose out of an assault and/or battery as those terms were defined by the court. Citing Webster's Third New World College Dictionary, the court defined assault as, "an *unlawful* threat or unsuccessful attempt to do physical harm to another, causing a present fear of immediate harm"; battery as "any *illegal* beating or touching of another person, either directly or with an object"; and assault and battery as "the carrying out of threatened physical harm or violence." (Emphasis added.) Olivares contends that, because Scottsdale's statement of uncontroverted material facts and her responses thereto do not establish that Son's shooting was unlawful or illegal, Scottsdale failed to show that the assault and battery coverage limitation applied as a matter of law.[6]

Olivares's second point ignores admissions she made in her response to Scottsdale's motion for summary judgment. The following statements were in Scottsdale's statement of uncontroverted material facts and were admitted by Olivares in her response:

---

[6] Scottsdale asserts that Olivares cannot raise the alleged failure to demonstrate that the shooting was unlawful or illegal on appeal because she did not raise that issue in response to Scottsdale's motion for summary judgment until oral argument on the motion, and thus, she failed to preserve the issue. We disagree. As the non-moving party, Olivares was not required to offer legal arguments in opposition to a motion for summary judgment. *See ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381-82 (Mo. banc 1993) ("The non-movant never needs to establish a right to judgment as a matter of law; the non-movant need only show that there is a genuine dispute as to the facts underlying the *movant's* right to judgment.") (emphasis in original).

12

3. While at [the bar], [Son] and [Patron] got into a fight, which others were able to break up.

**ADMIT**

. . .

5. As he was leaving, [Patron] was overheard saying: "I'll be back. You'll regret it."

**ADMIT**

6. [Patron] left the bar and went to his car from which he retrieved a gun.

**ADMIT**

7. [Patron] then returned to [the bar] with the gun and fired a shot into the air.

**ADMIT**

8. Before police arrived, [Patron] shot [Son], who was lying outside the bar door when the [bar] employee returned from calling the police.

**ADMIT**

9. [Son] later died from the gunshot wounds.

**ADMIT**

Thus, Olivares admitted that Patron got into a fight that others had to break up; he made threatening comments as he left the bar; he retrieved a gun and returned to the bar; he shot the gun in the air, and then he shot and killed Son. We find these admitted facts sufficient to demonstrate that Patron engaged in unlawful conduct.

Where, as here,

"a motion for summary judgment is made and supported as provided in this Rule 74.04," i.e., when the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response*, by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial."

13

*ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (quoting Rule 74.04(e)); *see also, Peck v. All. Gen. Ins. Co.*, 998 S.W.2d 71, 75 (Mo. App. E.D. 1999) ("The non-movant must supplement the summary judgment record where the court is satisfied movant has made a prima facie case for summary judgment."). Thus, the burden shifted to Olivares to provide evidence contradicting Scottsdale's prima facie showing that Patron's conduct was illegal. She did not provide that evidence, but instead, she speculated that perhaps the shooting was accidental. "A genuine issue exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous[; m]ere speculation and conjecture are not enough to create a genuine issue." *Welhoff v. Farm Bureau Town & Country Ins. Co.*, 54 S.W.3d 589, 594 (Mo. App. W.D. 2001) (citing *ITT Com.*, 854 S.W.2d at 382, 378). Olivares did not meet her burden to show there was a genuine dispute regarding the legality of Patron's conduct.

Point II is denied.

## Conclusion

Finding that there are no genuine issues of material fact and that Scottsdale is entitled to judgment as a matter of law, we affirm the motion court's award of summary judgment to Scottsdale.

_____
Karen King Mitchell, Presiding Judge

Anthony Rex Gabbert and W. Douglas Thomson, Judges, concur.

14